Filed 1/7/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re F.S., a Person Coming Under the Juvenile Court Law. | B260760 |
| | (Los Angeles County Super. Ct. No. CK98545) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| I.S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Tony L. Richardson, Judge.  Affirmed.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jessica Paulson-Duffy, Deputy County Counsel, for Plaintiff and Respondent.

Mother I.I. and Father I.S. are parents of a daughter, F.S., who was born in 2010. The parents have a history of domestic violence, and when the Department of Children and Family Services (DCFS) learned that Mother and Father had been involved in a physical altercation in March 2013, the juvenile court assumed dependency jurisdiction over F.S. and ordered her placed in Mother's home. While dependency proceedings were ongoing, Mother and Father were involved in another physical altercation, and police arrested Mother as the aggressor. After her arrest, Mother took F.S. to Texas without notifying the social worker. The juvenile court issued an arrest warrant for Mother and a protective custody warrant for F.S., and DCFS filed a Welfare and Institutions Code section 387[1] petition to remove F.S. from Mother's physical custody. While Mother and F.S. were absent from the jurisdiction, the juvenile court held a hearing on the petition and ordered F.S. removed.[2] Father appeals from the juvenile court's removal order and asks us to decide (1) whether the juvenile court erred in proceeding with the section 387 hearing in Mother's absence, and (2) whether the court's decision to sustain the section 387 petition and remove F.S. from Mother's custody is supported by sufficient evidence.

BACKGROUND

A.    *Events Prior to the Challenged Section 387 Hearing and Removal Order*

1.    *The family comes to the attention of DCFS*

On March 18, 2013, Mother was getting F.S. ready for school and Father struck Mother in the face, causing a nosebleed. Mother contacted the police and sought medical attention, and police arrested Father. Father asserted the incident was an accident. The District Attorney's office declined to file charges against Father.

---

[1]    Undesignated statutory references that follow are to the Welfare and Institutions Code.

[2]    As we later explain, DCFS subsequently secured F.S.'s return to California.

2

DCFS was notified of the incident and assigned a social worker to investigate. After reviewing the police report, DCFS learned that there had been prior episodes of domestic violence between Mother and Father. The DCFS social worker asked Mother about these prior incidents. Mother disclosed that in 2011, she was arrested because she bit Father; F.S. was present during the altercation. Mother pled guilty and the court ordered her to complete 52 weeks of domestic violence classes. Mother also told the social worker about a second incident in 2012 when she was asleep with F.S. in the bed and awoke to find Father standing over her with a knife. She claimed Father cut her shirt and threatened to kill her. Mother got up and called 911.

In addition to interviewing Mother, the social worker visited Mother's apartment. The social worker saw that F.S. had a crib and that the parents slept in separate bedrooms. There was a hole in the door to Father's bedroom. Mother told the social worker the hole "was from another time when we were fighting. I don't remember what happened." Mother told the social worker she wanted to get away from the situation and move to Texas to be with her family.

The social worker also spoke to the teacher at F.S.'s preschool. The teacher said that F.S. came to school well dressed and well groomed, and the teacher told the social worker that she had not seen any marks or bruises on F.S.

2. *DCFS files, and the juvenile court sustains, a section 300 petition*

DCFS filed a section 300 petition alleging that F.S. came within the jurisdiction of the juvenile court under section 300, subdivisions (a) and (b) because of the history of domestic violence between Mother and Father, including the episode on March 18, 2013. At a detention hearing on the petition, the juvenile court made detention findings against Father and ordered F.S. detained and placed with Mother. The court ordered family maintenance services, and Father was given monitored visitation.

3

At the adjudication hearing on the section 300 petition,[3] Mother and Father did not contest the petition's allegations. The juvenile court dismissed the count under subdivision (a) and sustained the count under subdivision (b). The court ordered monitored visitation for Father, as well as domestic violence and parenting classes. The court ordered an assessment under the Interstate Compact on the Placement of Children (Family Code section 7900 et seq.) in connection with Mother's stated desire to move to Texas. The court, however, ordered that no one may take F.S. out of the state of California without notifying the social worker. The juvenile court also ordered Mother to make herself and the child available to DCFS for child welfare contacts, and to make F.S. available for unannounced home calls. Mother signed the case plan order listing these obligations. In the weeks following the adjudication hearing, Mother told the social worker that the criminal court would not allow her to move to Texas.

> 3. *Additional incidents between Mother and Father, and Mother takes F.S. to Texas*

The juvenile court scheduled a six-month review hearing to take place in November 2013. Before the hearing, DCFS learned that Father made a "keep the peace" call to police on August 4, 2013, because he was at Mother's apartment to pick up his belongings and Mother was being uncooperative. DCFS also learned that four days later, on August 8, Mother called the police claiming Father and his friends were knocking on her front door and refused to leave. When the police arrived, the door appeared to have been kicked, but Mother told the police she did not need their help. DCFS discovered both incidents in August by obtaining police records; neither Mother nor Father reported the incidents when communicating with DCFS.

---

[3] A reporter's transcript of the adjudication hearing is not included in the record. The record does include the minute order issued by the court in connection with the hearing, and we summarize the proceedings based on that order.

The juvenile court continued the six-month review hearing from November 2013 to January 2014, and DCFS filed an updated report in advance of the continued hearing. According to the report, Mother was meeting all of F.S.'s basic, emotional, medical, and educational needs. The report, however, stated that the "parents have made little progress with court ordered programs since the last court hearing on [November 22, 2013]." Father had not been attending visitation, and he told the social worker that, culturally, monitored visitation was viewed negatively and was a sign of weakness. Mother was in partial compliance with the order to attend domestic violence classes; although she had completed the classes, she had not finished paying for them. Mother had attended two parenting classes, and the instructor was concerned with Mother's level of commitment. Father had not enrolled in any court-ordered classes, nor had he enrolled in court-ordered counseling.

At the six-month review hearing, the court ordered DCFS to continue to provide reunification services to the parents, and the court set the next review hearing for July 31, 2014.

On April 19, 2014, police responded to Father's apartment. Mother—who had brought F.S. to the apartment with her—engaged in a violent confrontation with Father. Father's face was bleeding and he had blood on his clothing; he reported that Mother had thrown a phone at him, striking him on his forehead, during the course of an argument. Mother was in a rear bedroom of the apartment and had scratches on her inner right arm. Mother gave police a false name, "Grace." Police determined Mother was the aggressor in the altercation and arrested her.

DCFS contacted Mother by phone after learning about the incident. Mother claimed—falsely—that she was not the "Grace" that had been arrested by the police. Mother also stated she no longer resided in California, claiming her attorney had given her permission to leave the state. During the phone call, Mother refused to tell DCFS where she was residing, and when the social worker told her she did not get permission to leave the state with F.S., Mother insisted she did and hung up the phone. In a subsequent phone

5

call, Mother told DCFS she was living in Dallas, Texas, but she refused to provide her address.

B. *The Court Holds a Hearing on a Supplemental Petition Filed by DCFS and Removes F.S. from Mother's Custody*

DCFS filed a section 387 supplemental petition based on the April 19, 2014, domestic violence incident between Mother and Father. The petition alleged Mother failed to protect F.S. by continuing to have contact with Father, engaging in domestic violence with Father, and allowing Father unlimited access to F.S.[4] Based on information that Mother had taken F.S. to Texas without permission, the court issued a protective custody warrant for F.S. and an arrest warrant for Mother. The court ordered F.S. detained and set the matter for hearing on July 31, 2014.

DCFS interviewed Mother by telephone in advance of the next court hearing. Mother continued to falsely deny she had been involved in the April 19, 2014, domestic violence incident with Father. She claimed the "Grace" referred to in the police reports was her step-sister who was visiting California from Africa. Mother also claimed she was already in Texas on April 19, 2014—the date of the incident. DCFS also spoke to Father, and he likewise falsely claimed Mother was not involved in the April 19, 2014, altercation.

---

[4] The sole count of the supplemental petition states: "The child [F.S.]'s mother, [I.I.] aka ['Grace'] and father, [I.S.], have a history of engaging in violent altercations in the presence of the child. On 04/19/2014, the father pushed the mother's head and arm and pulled the mother inflicting scratches to the mother's arms and finger. The father pushed the mother and struck the mother's head with a phone. The mother threw a phone at the father's head inflicting a bleeding laceration to the father's forehead. On 04/19/2014, the mother was arrested on charges of Inflict Corporal Injury; Spouse/Cohabitant. The mother failed to protect the child in that the mother continued to have contact with the father, engaged in domestic violence and allowed the father to have unlimited access to the child despite a restraining order. Such violent altercations on the part of the mother and the father and the mother's failure to protect the child endanger the child's physical health and safety and place the child at risk of physical harm, damage, danger and failure to protect."

6

Father told DCFS that the "Grace" who was involved was Mother's twin sister (not her step-sister, as Mother had told DCFS).

Counsel for all parties appeared in court on July 31, 2014, the scheduled date for the hearing on the section 387 petition. Reports submitted by DCFS advised the juvenile court that Mother remained at large with F.S. and was reportedly living at an address in Richardson, Texas. The court ordered the warrants for Mother and F.S. to remain in full force and effect and scheduled a contested hearing on the section 387 petition to take place on December 3, 2014.

Roughly a week before the scheduled December 3 hearing, the social worker contacted Mother by phone. Mother confirmed that she remained in Texas with F.S., and Mother stated she was aware of the upcoming December 3 court date. The social worker asked Mother if she planned to be present for the hearing and Mother stated she was not sure because the court has refused to lift the outstanding arrest warrant. Mother told the social worker that she and F.S. were doing well.

At the December 3, 2014, hearing, Mother and F.S. were not present. DCFS stated it was in contact with Mother and had her address and phone number. Mother's counsel informed the court that Mother "essentially indicated that she's got no intention of returning to California to answer to the allegations in the petition, in person at least." Mother's counsel conceded the court could conduct the adjudication portion of the hearing without Mother and F.S. being present, but counsel argued the juvenile court should not proceed to disposition. Father's attorney objected to going forward on the petition in any respect, arguing that Mother was not available for cross-examination regarding the accusation in the supplemental petition that Father pushed her during the April 19 altercation. Father also argued, relying on *In re Baby Boy M.* (2006) 141 Cal.App.4th 588 (*Baby Boy M.*), that it would be improper for the court to assert jurisdiction and make findings related to F.S. because the court did not have sufficient information about her current status. The court trailed the matter to consider whether it could rule on the petition in Mother's absence.

7

The following day, December 4, Father and counsel for all parties were again present in court. Father's attorney continued to object to going forward with the hearing. Father's counsel believed sustaining the section 387 petition would not move the case forward any better than the warrants that were already issued and in place.

The juvenile court ruled it would proceed with the hearing on the section 387 petition, which "really relates to a placement issue with respect to the mother, not the father." The court explained jurisdiction over F.S. had already been established via the section 300 petition, and it reminded the parties it had already found that placing F.S. in the home of Father would be contrary to her welfare. The court concluded *Baby Boy M.* was inapposite because that case involved a section 300 petition, not a section 387 petition filed after the court has already established jurisdiction over the child. The court further found, citing *In re Claudia S.* (2005) 131 Cal.App.4th 236 (*Claudia S.*), that the disentitlement doctrine barred Mother's argument that the court could not move forward with the hearing. The court rejected Father's argument that cross-examination of Mother was essential, stating Father was present and the court would hear any argument he may make. The court also disagreed with Father's argument that the outstanding warrants were a sufficient means to move the case forward and protect F.S.: "[I]n the court's view, [DCFS's petition] seeks to modify an earlier dispositional order by establishing the need for [a] more restrictive level of custody because of the conduct in which the Mother has engaged here in California prior to Mother going to Texas and vowing not to return to California."

On the merits of the petition, the juvenile court admitted DCFS reports into evidence without objection and granted Father's request to testify. Father testified that on April 19, 2014, he and Mother had an argument about a car. After initially denying the argument became physical, Father admitted on cross-examination that Mother threw a phone at him and that F.S. was in the house at the time. Father admitted he lied to the social worker when he claimed to have fought with Mother's "twin sister." Father also revealed he had spoken to F.S. in Texas and stated that she was residing with Mother, was going to school, and had reported no concerns.

8

After the presentation of evidence, DCFS urged the court to sustain the petition as pled based on the physical violence between the parents in F.S.'s presence and Mother's failure to be forthcoming with DCFS about the domestic violence between her and Father. Counsel for DCFS requested reunification services and monitored visitation, and counsel for F.S. concurred.

Father requested dismissal based upon a claimed "lack of nexus" between the domestic violence incident occurring in April 2014 and the circumstances at the time of the hearing. That is, Father argued Mother and F.S. were living in a different state and the incident roughly eight months earlier had, in his view, little bearing on F.S.'s safety. Father urged the court to strike the allegations against him from the section 387 petition and to refrain from ordering additional reunification services for him. Mother's counsel similarly argued a "lack of nexus," contending Mother was in Texas and there was nothing in DCFS reports describing F.S.'s then-existing condition or whether she was at risk.

The juvenile court sustained the section 387 petition as alleged. The court found that its previous disposition had not been effective in protecting F.S., and that F.S.'s earlier placement with Mother was no longer appropriate. The court also disagreed that there was no current risk to F.S. if she remained with Mother.

The juvenile court made an express finding, by clear and convincing evidence, that the circumstances described by section 361, subdivision (c)(1) were present and ordered F.S. removed from Mother's custody. The court directed DCFS to ensure she was suitably placed. The court ordered monitored visitation for Father and ordered him to participate in a domestic violence program. The court also directed DCFS to make every effort to obtain the support of the Texas child services agency to expedite the return of F.S.[5]

---

[5] The court stated: "[N]ow that we've reached disposition, there's no reason why [DCFS] cannot, for all practical purposes, seek the cooperation of Texas authorities to check on mother and the child's circumstances. I don't know if Texas is a state that requires that California reach disposition before it will get involved. But if it does, then we're at that point."

9

C.    *Post-Appeal Proceedings*

Father filed a notice of appeal on December 8, 2014, challenging the findings and orders made by the juvenile court during the hearing on the section 387 petition.

After Father filed a notice of appeal (Mother did not appeal), this court took judicial notice of subsequent proceedings at DCFS's request.[6] DCFS successfully worked with Texas authorities and obtained the return of F.S. to California on March 19, 2015. The juvenile court thereafter ordered the warrants recalled because F.S. had been returned to California and suitably placed.

DISCUSSION

When an agency seeks to change the placement of a dependent child from a parent's care to a more restrictive placement, such as foster care, it must file a section 387 petition. (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.) The petition must allege facts that establish by a preponderance of the evidence that a previous disposition order was ineffective, but it need not allege any new jurisdictional facts or urge additional grounds for dependency because the juvenile court already has jurisdiction over the child based on its findings on the original section 300 petition. (*Ibid.*; *In re A.O.* (2010) 185 Cal.App.4th 103, 110.) If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. (*In re T.W., supra,* at p. 1161, citing *In re H.G.* (2006) 146 Cal.App.4th 1, 11; see also *In re Javier G.* (2006) 137 Cal.App.4th 453, 462; *In re Miguel E.* (2004) 120 Cal.App.4th 521, 542.) "'The ultimate "jurisdictional fact"

---

[6]    "Appellate courts rarely accept postjudgment evidence or evidence that is developed after the challenged ruling is made. (See *In re Zeth S*. (2003) 31 Cal.4th 396, 405, 413-414 [].)" (*In re Sabrina H*. (2007) 149 Cal.App.4th 1403, 1416.) Nonetheless, post-judgment evidence is admissible for the limited purpose of determining whether any subsequent developments have rendered an appeal partially or entirely moot. (See *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390.) We limit our consideration of the judicially noticed documents to mootness issues.

necessary to modify a previous placement with a parent or relative is that the previous disposition has not been effective in the protection of the minor.'" (*In re A.O., supra,* at p. 110.)

Father challenges the juvenile court's order removing F.S. from Mother's physical custody.[7] Procedurally, he argues the court should not have held a hearing on the section 387 supplemental petition in Mother's absence. Substantively, he argues the court's order removing F.S. from Mother's custody is not supported by sufficient evidence, largely based on the claim that F.S.'s absence from the jurisdiction deprived the court of sufficient information about her then-current condition. DCFS concedes Father has standing on appeal to challenge the juvenile court's findings and orders on the section 387 petition, citing *In re H.G., supra,* 146 Cal.App.4th at p. 10, but DCFS contends the juvenile court's removal order was procedurally and substantively proper. We agree with DCFS and affirm.

A.     *The Juvenile Court Did Not Prejudicially Err by Proceeding in Mother's Absence*

A parent has a right to due process in dependency proceedings, including the right to confront and cross-examine witnesses in many circumstances. (*In re Ingrid E.* (1999) 75 Cal.App.4th 751, 756-757 [right to confront and cross-examine witnesses, "at least at the jurisdictional phase"]; *In re Amy M.* (1991) 232 Cal.App.3d 849, 864.) Due process "is a flexible concept which depends upon the circumstances and a balancing of various factors." (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 816-817, citing *In re Sade C.* (1996) 13 Cal.4th 952, 992.) Father argues the juvenile court's decision to go forward with the section 387 hearing in Mother's absence trammeled his due process right to cross-examine Mother and contravened principles established in *Claudia S.* and *Baby Boy M.*

---

[7]     Father's opening brief also challenged the warrants issued by the juvenile court for Mother and F.S. Now that F.S. has been returned to California and the court has recalled the warrants, Father concedes the issue is moot.

###### 1. *Cross-examination*

The juvenile court accorded the parties substantial evidentiary process at the section 387 hearing: Father testified, and the court offered him and counsel for all parties the opportunity to introduce additional evidence, if desired. Although due process in dependency proceedings is a flexible concept, we assume for purposes of our discussion that under the circumstances Father had a due process right to cross-examine Mother. We hold, however, that any error in proceeding with the hearing—which necessarily deprived Father of his right to cross-examine Mother because she was unavailable—was not prejudicial.

Father's proffered reason for cross-examining Mother—to attempt to disprove the allegation that he pushed, scratched, and struck Mother during the April 19, 2014, domestic violence incident—establishes that such cross-examination could not have affected the juvenile court's determination of the supplemental petition. By the time of the section 387 hearing, the juvenile court had already established jurisdiction over F.S. pursuant to the earlier section 300 petition. Father did not contest that jurisdictional finding, and the juvenile court had already made adverse findings against Father and ordered F.S. removed from his custody. Having done so, the sole question before the juvenile court on the supplemental petition was whether it should change its prior order and order F.S. removed from *Mother's* physical custody as well. The issue of whether Father caused injuries to Mother during the most recent domestic violence incident was immaterial to that determination. Even if the juvenile court continued the hearing (until some unknown date when Mother was present), and even if Mother admitted Father did not push her or scratch her arms, there was no dispute that the parents had again engaged in domestic violence in F.S.'s presence when Mother threw a phone at Father. Cross-examination of Mother on Father's actions during the altercation therefore would not have affected the outcome of the hearing, and the decision to go forward without Mother as a witness was not prejudicial under even the more stringent standard of harmlessness review. (See *In re Amy M., supra,* 232 Cal.App.3d at p. 868 [assessing whether error

12

harmless beyond a reasonable doubt]; cf. *In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817 [explaining a court may request an offer of proof if cross-examination appears to be irrelevant and holding cross-examination was not required based on the offer of proof].)

        2.     *Claudia S. and Baby Boy M.*

Father argues, citing *Claudia S., supra,* 131 Cal.App.4th 236 and *Baby Boy M., supra,* 141 Cal.App.4th 588, the court erred in proceeding on the section 387 petition in Mother's absence. The thrust of Father's argument appears to be the claim that both cases demonstrate the juvenile court's order removing F.S. from Mother's custody was unsupported by substantial evidence. We address, in the next part of the opinion, the substantial evidence supporting the juvenile court's order. We highlight here, however, the reasons why neither *Claudia S.* nor *Baby Boy M.* support a claim that the court in this case committed any procedural error in going forward with the hearing.

In *Claudia S.*, the mother took her minor child to Mexico knowing that DCFS planned to file a section 300 petition to establish jurisdiction over the child. (*Claudia S., supra,* 131 Cal.App.4th at p. 241.) The juvenile court in *Claudia S.* conducted jurisdiction, disposition, and review hearings, and then terminated reunification services, all in the absence of the parents and children and without ever appointing counsel for the parents. (*Id.* at p. 250.) The Court of Appeal, viewing the hearings as "'a fiction [] to move the case toward final resolution,'" held the juvenile court violated the parents' due process rights because the parents were not represented by counsel, lacked actual notice of the hearings, and did not receive any advisements by the court about their legal rights, including their right to counsel. (*Id.* at pp. 250-251.)

*Claudia S.* does not support any claim that there was a due process violation in this case. Father was present with counsel at the section 387 hearing. The juvenile court had also previously appointed counsel for Mother and F.S., and counsel for both were present at the section 387 hearing to advocate for their interests. There is also no notice issue in this case. It is undisputed that Mother had actual notice of the hearing, and her attorney

informed the court that she had no intention of returning to California to answer to the allegations in the petition in person.

In *Baby Boy M.*, the mother gave birth to a boy and promptly gave the child to the biological father, who she claimed left the state with the child. (*Baby Boy M., supra,* 141 Cal.App.4th at pp. 592-594.) The juvenile court issued a protective custody warrant for the child, but proceeded to conduct the jurisdiction and dispositional hearing in the child's absence. (*Id.* at p. 595.) Baby Boy M.'s mother contended the juvenile court lacked subject matter jurisdiction to conduct dependency proceedings under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA, Family Code § 3400 et seq.) because DCFS had introduced insufficient evidence to establish California was the child's home state when dependency proceedings began. (*Id.* at p. 599.) The Court of Appeal agreed that there was insufficient evidence to establish subject matter jurisdiction. The Court of Appeal further observed that "prudential considerations independent of the jurisdictional analysis" should have compelled the juvenile court to defer holding the jurisdictional hearing until Baby Boy M. was located "precisely because it is at best unclear whether the juvenile court has subject matter jurisdiction in this case and because the court lacks any meaningful information concerning Baby Boy M., including the matters specified in Family Code section 3421 [the "default" jurisdiction-by-necessity provision of the UCCJEA]." (*Id.* at pp. 600-601.)

Here, the juvenile court had subject matter jurisdiction, and neither party contends otherwise. Indeed, the juvenile court had already adjudicated a section 300 petition and declared F.S. a dependent of the court. The only question before the court at the section 387 hearing was whether F.S. should be removed from Mother's custody because the prior dispositional order had been ineffective to protect F.S. The prudential considerations that applied in *Baby Boy M.* because of the near total lack of jurisdictional information, i.e., because "neither the juvenile court nor [DCFS] knows where Baby Boy M. is" (*Baby*

*Boy M., supra,* 141 Cal.App.4th at p. 600, fn. 11), do not apply with equal force here.[8] Instead, as we shall now explain, there was sufficient information before the juvenile court—substantial evidence, in legal parlance—to permit the court to hear and rule on the section 387 petition.

B.  *Substantial Evidence Supported the Decision to Remove F.S. from Mother's Custody*

We review the court's jurisdictional and dispositional findings on a supplemental petition for substantial evidence. (*In re T.W., supra,* 214 Cal.App.4th at p. 1161; *In re A.O, supra,* 185 Cal.App.4th at p. 109.) Evidence is substantial if it is "'reasonable, credible, and of solid value'; such that a reasonable trier of fact could make such findings." (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.) Father, as the party challenging the juvenile court's findings and orders, bears the burden to show there is no evidence of a sufficiently substantial nature. (*In re Maria R.* (2010) 185 Cal.App.4th 48, 57.)

There was overwhelming evidence before the juvenile court that Mother brought F.S. to Father's apartment on April 19, 2014, and engaged in a violent altercation with Father after the court's prior dispositional order on the section 300 petition—which alleged F.S. was at substantial risk of harm because of the parents' history of domestic violence. The court's prior dispositional order that placed F.S. in Mother's home was therefore ineffective in protecting F.S., and the juvenile court properly sustained the section 387 petition.

We also hold that substantial evidence supported the juvenile court's dispositional order removing F.S. from Mother's custody. The juvenile court found by clear and convincing evidence that there was a substantial danger to the physical health, safety, protection, or physical or emotional well-being of F.S. if she were returned to Mother's

---

[8]    Father argued in his opening brief that the juvenile court's order of reunification services for him "will be of no consequence because [F.S.] is absent from the state of California . . . ." Because F.S. has been returned to California, the point is moot.

custody, and that there were no reasonable means by which F.S.'s physical health could be protected without removing F.S. from Mother's physical custody. These are the findings required by law (§ 361, subd. (c)(1); *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288), and they are justified by sufficient evidence. (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 881 [clear and convincing standard "disappears" on appeal and court assesses whether there is substantial evidence to support the order or judgment].)

The juvenile court was well familiar with the repeated incidents in which Mother and Father had engaged in domestic violence while F.S. was present in the home. DCFS reports stated two such incidents occurred even before dependency proceedings began, and a third domestic violence incident was the basis for the section 300 petition that the juvenile court sustained. The juvenile court nevertheless entered a prior dispositional order giving Mother custody of F.S. When yet another physical altercation occurred while F.S. was present—the April 19, 2014, incident that was the subject of the section 387 petition—the juvenile court assuredly had before it sufficient evidence to establish Mother was unable to provide proper care for F.S. and F.S. would potentially suffer detriment if she remained in Mother's custody.[9] (*In re T.W., supra,* 214 Cal.App.4th at p. 1163; see also *In re T.V.* (2013) 217 Cal.App.4th 126, 134-135; *In re N.M.* (2011) 197 Cal.App.4th 159, 169-170 [court may consider a parent's past conduct in deciding whether to remove child]; *In re Heather A., supra,* 52 Cal.App.4th at pp. 193-195.) As other appellate decisions have held, a child need not have been harmed before removal is appropriate because the focus of the

---

[9] Father makes repeated reference to the indication in the police report that F.S. was in a separate room from her parents at the time the April 19, 2014, altercation took place. That F.S. may have been in a different room does not, in our view, provide any basis to undermine the juvenile court's order. (See *In re Heather A.* (1996) 52 Cal.App.4th 183, 194 [episodes of violence between the parents, including some while the children were elsewhere in the home, put children in a position of physical danger "since, for example, they could wander into the room where [the violence] was occurring and be accidentally hit by a thrown object"].) Mother's decision to bring F.S. to Father's apartment, knowing the juvenile court had ordered Father to have only monitored visitation, and to engage in a violent confrontation with Father is quite troubling no matter what room F.S. may have been in when the confrontation occurred.

statute is on averting harm to the child. (See, e.g., *In re T.W., supra,* at p. 1163.) Substantial evidence also establishes that an alternative short of removal from Mother's custody would not have sufficed to protect F.S. Given Mother's demonstrated willingness to make false statements to DCFS and to the police concerning her participation in domestic violence, and given Mother's non-compliance with court orders and her failure to appear despite being aware of the outstanding arrest warrant, the juvenile court had an ample basis to conclude there were no conditions of supervision it could impose that would reasonably guarantee F.S.'s safety if she were left in Mother's custody.

Father concedes that Mother "placed [F.S.] at risk on that day in April 2014" and made a "grave mistake," but he points to other evidence in the record indicating Mother was providing F.S. with proper care by meeting her basic, medical, emotional, and educational needs. Under the applicable standard of review, however, we do not reweigh the evidence. (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366 ["[W]e do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw"].) Because there was sufficient evidence supporting the juvenile court's judgment that removing F.S. from Mother's custody was necessary to avoid substantial danger to F.S. from repeated incidents of domestic violence, additional evidence that Mother was otherwise meeting F.S.'s needs and that F.S. herself had not yet suffered physical harm is not a basis for reversal.

Relying on *Claudia S.* and *Baby Boy M.*, however, Father attacks the evidence supporting the removal order on the ground that it was stale. Father contends the juvenile court had no evidence before it as to the condition of F.S. at the time of the section 387 hearing because Mother had taken F.S. to Texas eight months earlier.

*Claudia S.* and *Baby Boy M.* are inapposite because there was sufficient evidence before the juvenile court in this case to reliably fashion a dispositional order. The record belies Father's contention that there was *no* evidence before the juvenile court of F.S.'s condition after Mother took her to Texas. During the section 387 hearing, Father testified

17

that he had spoken to F.S. on the telephone, that F.S. reported no concerns, that F.S. was going to school in Texas, and that he was unsure whether F.S. was residing with anyone besides Mother. DCFS had also been in phone contact with Mother, and approximately a week before the section 387 hearing, Mother told a social worker that she and F.S. were in Texas and doing well. On the other hand (and unlike *Claudia S.* and *Baby Boy M.*), the juvenile court in this case already had jurisdiction over F.S. under section 300 and had presided over the dependency proceedings for roughly a year. The juvenile court could therefore contrast the information it did have concerning F.S.'s then-current condition—the parents' reports that nothing was amiss—with its knowledge that Mother had been involved in domestic violence in F.S.'s presence, including the most recent altercation with Father on April 19. The juvenile court also knew that Mother (and Father) had previously been untruthful on at least one occasion when questioned by DCFS, denying that Mother was involved in the April 19 domestic violence incident when F.S. was present in the apartment. The juvenile court was further aware that Mother had fled the state after her most recent arrest without notifying the social worker as required by a prior court order, and that she remained in Texas despite knowledge of the arrest warrant the juvenile court had issued.

On this evidentiary record, the juvenile court expressly found there was a then-current risk to F.S.'s well-being: "Even though the minor is with the mother, the argument is that there doesn't appear to be any current risk. The court disagrees. Mother's conduct heretofore and the violent altercations that have existed . . . that conduct, including the most recent—although it was several months ago—raises serious concerns, in this court's view, about the minor's safety in the presence of the mother, who, according to the information before the court, is as much of the aggressor, or at least was in one instance, as the father." The juvenile court was justified in reaching that conclusion. Mother's status as the aggressor in at least one instance establishes that her move to Texas did not ensure additional violence would not occur; her violent behavior could find a target other than Father while she and F.S. were living in Texas. We also find it significant that the prior episodes of violence between Mother and Father were sometimes separated by months of

18

apparent calm (see *ante*, at pp. 2-5); even if the juvenile court believed that there had been no altercations in the months since Mother left for Texas with F.S., that was not a reliable indication that the danger of yet another incident had dissipated. (See *In re T.V.*, *supra,* 217 Cal.App.4th at p. 133 [observing, in adjudicating a section 300 petition, that "[a] parent's past conduct is a good predictor of future behavior"].) With Mother and Father's documented untruthfulness with DCFS in the past, the court was also entitled to reject the parents' assurances that F.S. was at no risk of harm and doing well with Mother in Texas.

We do recognize that *Claudia S.* and *Baby Boy M.* illustrate a real danger, namely, that a court acting without the child being present before the court may enter orders in a factual vacuum and in a manner that may not serve the child's best interests. But here, the substantial evidence before the juvenile court supporting the removal order stands in stark contrast to the dearth of information in those two cases.

## DISPOSITION

The juvenile court's findings and orders on the section 387 petition are affirmed.

CERTIFIED FOR PUBLICATION

BAKER, J.

We concur:

TURNER, P.J.

KRIEGLER, J.

19