Filed 6/27/16  In re Jordan W. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JORDAN W., a Person Coming Under the Juvenile Court Law. | B266856 |
| | (Los Angeles County Super. Ct. No. CK93386) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Emma Castro, Juvenile Court Referee.  Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

On July 20, 2015 the juvenile court sustained a supplemental petition pursuant to Welfare and Institutions Code section 387[1] and removed then-three-year-old Jordan W., who had previously been declared a dependent child of the juvenile court pursuant to section 300, subdivision (b), from the physical custody of his mother, M.W. On appeal M.W. contends substantial evidence does not support the court's finding that its prior order allowing Jordan to remain in her custody under the supervision of the Los Angeles County Department of Children and Family Services (Department) was ineffective in protecting the child. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The August 2013 Dependency Petition and the September 16, 2013 Home-of-Parent-Mother Order*

The Department received a referral regarding M.W. and Jordan in July 2013, indicating M.W. was homeless after being asked to leave her transitional housing. The referral alleged M.W., who was only 19 years old, used her welfare payments to buy marijuana instead of food and clothing. It was also reported that Jordan had been with M.W. when she stole clothes and food at a big-box store. When contacted by the Department, M.W. admitted she smoked marijuana and said she was homeless but staying with friends; she declined to identify the friends or provide their addresses. The children's social work observed Jordan to be clean, well-groomed and appropriately dressed; he appeared to be attached to M.W. and happy in her care.

On August 19, 2013 the Department filed a nondetention petition to declare two-year-old Jordan a dependent child of the juvenile court pursuant to section 300, subdivision (b), alleging there was a substantial risk he would suffer serious physical harm as a result of M.W.'s inability to provide regular care due to her use of illicit drugs and mental and emotional problems. After initially requesting a contested jurisdiction hearing, M.W. pleaded no contest on September 16, 2013 to an amended petition that alleged she had an unresolved history of marijuana use that periodically rendered her

---

[1]    Statutory references are to this code unless otherwise indicated.

incapable of providing Jordan with regular care and supervision. The amended petition as sustained also alleged, in connection with M.W.'s prior involvement with the Department, remedial services had "failed to resolve family problems in that mother failed to regularly participate in services to address such issues."[2]

In its jurisdiction/disposition report the Department stated Jordan was developing at a normal rate and was doing well physically and emotionally. M.W. was living with Jordan at the maternal grandmother's home, as she had done sporadically since the child's birth. Jordan appeared to be well-cared for and safe in the home. However, M.W. had advised the Department she would not quit smoking marijuana, which she claimed calmed her down. (At this point she had no medical marijuana recommendation from a physician.)[3] M.W. told the Department she had an adult supervising Jordan when she smoked but would not provide any details of his care. The Department also reported M.W. had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) but had stopped taking the prescribed psychotropic medication because she did not believe it helped her. In a subsequent interview before the jurisdiction/disposition hearing M.W. reported she no longer smoked marijuana regularly because her ADHD symptoms had lessened.

---

[2] M.W. was 17 years old when she gave birth to Jordan. The month after his birth the Department received a referral alleging general neglect and caregiver absence and incapacity based on M.W.'s marijuana use. M.W., who was herself a dependent child of the court, entered into a voluntary family reunification contract with the Department, agreeing to place Jordan in foster care. A section 300 petition was filed seven months later because M.W., who remained in a probation placement following a threat to one of her teachers, could no longer provide on-going care for Jordan. M.W. apparently complied with her case plan, and the petition was dismissed without prejudice several months later.

[3] Health and Safety Code section 11362.5, subdivision (b)(1)(B), part of the Compassionate Use Act of 1996, provides the Act is intended "[t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction."

After sustaining the amended section 300 petition, the court declared Jordan a dependent child of the court and ordered he remain released to M.W.'s custody under the Department's supervision. The court ordered family maintenance services, including M.W.'s participation in individual counseling to address the negative effects of marijuana use, mental health well-being, coping with family dynamics and being a single parent. M.W. was also ordered to provide four consecutive clean, random drug tests and to attend a parenting course.[4]

2. *The Judicial Review Hearings*

M.W. was arrested for shoplifting while Jordan was in her care in January 2014. She was convicted of theft, placed on probation and required to serve two days in jail. The Department reported for the section 364 judicial reviewing hearing in March 2014 that M.W. was once again homeless. M.W. indicated she was living with friends, family members and occasionally in a hotel. There was no support from her family. Jordan was considered to be safe in M.W.'s care. However, M.W. admitted she periodically smoked marijuana and was testing only sporadically: She had nine no-shows and two positive tests. M.W. insisted Jordan was not present when she used marijuana. M.W. also had not completed a parenting class or enrolled in individual counseling. The court found continued jurisdiction was necessary.

At the judicial review hearing in September 2014 the Department reported that M.W. continued to be homeless. M.W. had again been arrested in April 2014 based on a warrant for an unpaid ticket and yet again in July 2014 for assault. She said Jordan had stayed with a friend in April and with family members during her time in custody in July. M.W. missed eight scheduled drug tests during this period. The Department's efforts to help with housing were unsuccessful; it had assisted M.W. with childcare, which Jordan

---

[4] M.W. identified Marcus R. as Jordan's father, reported she was unaware of his whereabouts and stated she had had no recent contact with him. At the initial dependency hearing Marcus R. was found to be an alleged father only. At the disposition hearing the court declined to order any services for him.

attended on a daily basis with no problems reported. The Department remained positive about the quality of M.W.'s care for Jordan. The court found continued jurisdiction was necessary. A third judicial review hearing was scheduled for March 24, 2015.

At a meeting with Department personnel in October 2014, M.W. refused, in a rude and confrontational manner, to provide details about the individuals she claimed were caring for Jordan while she was in custody or was otherwise unavailable to supervise him. Asked about reports she was engaging in prostitution, M.W. simply said she was no longer involved in it. (Material submitted by the Department with its report for the March 2015 judicial review hearing disclosed that M.W. had been arrested on charges relating to prostitution in July 2014, was convicted and sentenced to 10 days in jail. She had again been arrested for prostitution in September 2014, convicted and sentenced to 24 months' probation and 10 days in jail.) As for her nonappearance at scheduled drug tests, M.W. insisted her letter was never called.

For the March 24, 2015 judicial review hearing the Department reported that M.W. continued to be homeless, again stating she lived with friends, family members and sometimes hotels. She would not provide the Department any addresses, frustrating the Department's ability to evaluate the safety of those residences for Jordan. By this time M.W. had obtained a medical marijuana recommendation, but she would not reveal the nature of the medical condition being treated. She continued to use marijuana and refused to comply with court-ordered testing or to enroll in individual counseling or a parenting program. The Department recommended the termination of family maintenance services.

3. *The Section 387 Proceedings*

On March 20, 2015, several days before the scheduled review hearing, the Department sought and received authorization to detain Jordan from M.W. The section 364 hearing was continued, and the Department filed a section 387 petition on Jordan's behalf, alleging the previous disposition had not been effective to protect him because of M.W.'s unresolved marijuana use and her failure to comply with the juvenile

court's orders to participate in parenting and counseling programs or to submit the required four clean drug tests. The supplemental petition also specifically alleged that on October 22, 2014 and November 24, 2014 M.W. had been under the influence of marijuana while Jordan was in her care and supervision.

In an interview prior to the contested hearing on the section 387 petition, M.W. acknowledged she smoked marijuana on a regular basis, declared her intention to continue to smoke marijuana for the foreseeable future and insisted she was able to provide proper care and supervision for Jordan while using marijuana. Information submitted by the Department demonstrated that M.W. had been inconsistent in her visitation with Jordan subsequent to his removal from her custody, missing many appointments and arriving late to others. (The Department reported M.W. had been uncooperative and verbally abusive when attempts had been made to assist her with visitation.) The monitor who supervised visits described M.W. as inattentive, more engaged with phone calls and text messages than interested in interacting with Jordan.

M.W. did not appear in court on the date set for the contested section 387 hearing. Her counsel confirmed she had provided M.W. with notice of the hearing date; the court denied a request to continue the hearing. Jordan's counsel urged the court to sustain the Department's supplemental petition.

The court sustained the petition in its entirety. The court expressed its concern as to how uncooperative M.W. had been with the social workers attempting to assist her and found her failure to comply with any of the orders made at the disposition hearing in September 2013 troubling. The court noted that M.W.'s recommendation for medical use of marijuana had not been submitted as evidence at the section 387 hearing, but explained, in any event, "even though a parent may have a right in the State of California to smoke marijuana with a medical marijuana license, it does not mean that a parent can smoke marijuana while caring for a child of tender years, age three . . . and that the child will be safe in that parent's care." The court found that M.W. had been smoking marijuana on a continuing basis while Jordan was under her supervision and in her care,

6

not crediting M.W.'s unsubstantiated claim that she only used marijuana when Jordan was with a babysitter—a claim the court stressed was inconsistent with M.W.'s own statement that she was able to provide adequate care for the child while smoking marijuana.

Proceeding to disposition, the court terminated its prior home-of-parent-mother order, removed Jordan from M.W.'s custody and placed him in the care of the Department for suitable placement. The court ordered the Department to provide M.W. with family reunification services and directed M.W. to participate in individual counseling to address appropriate parenting and the effects of chronic marijuana use on such parenting. The Department was instructed to continue to assist M.W. with transportation and in her efforts to find housing. Visitation was to be monitored, at least two times per week for three hours each visit.

## DISCUSSION

When the Department seeks to change the placement of a dependent child from a parent's care to a more restrictive placement, such as foster care, it must file a section 387 petition. (*In re F.S.* (2016) 243 Cal.App.4th 799, 808; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1161; see Cal. Rules of Court, rule 5.560(c).) The petition must allege facts that establish the court's previous disposition order was ineffective (§ 387, subd. (b); *In re F.S.*, at p. 808), but it need not allege any new or additional grounds for dependency because the juvenile court already has jurisdiction over the child based on its findings on the original section 300 petition. (*In re T.W.*, at p. 1161; *In re A.O.* (2010) 185 Cal.App.4th 103, 110.) If the court finds the factual allegations are true by a preponderance of the evidence, it conducts a disposition hearing to determine whether removing custody is appropriate pursuant to the same procedures as apply in an original disposition hearing. (*In re F.S.*, at p. 808; *In re H.G.* (2006) 146 Cal.App.4th 1, 11; see Cal. Rules of Court, rule 5.565(e) [requirement for bifurcated hearing on a subsequent or supplemental petition].) "'The ultimate "jurisdictional fact" necessary to modify a previous placement with a parent or relative is that the previous disposition has not been

effective in the protection of the minor.'" (*In re A.O.*, at p. 110.) We review the juvenile court's jurisdiction and disposition findings for substantial evidence. (*In re T.W.*, at p. 1161.)

M.W. advances a two-pronged challenge to the juvenile court's section 387 findings. First, she contends whatever issues may exist with respect to her ongoing use of marijuana and her unstable living situation, Jordan was well cared for and not at any substantial risk of harm. Second, she insists that, between the court's initial disposition order on September 16, 2013, which allowed Jordan to remain in M.W.'s custody, and Jordan's removal on March 20, 2015, virtually nothing had changed with respect to her life or parenting ability that would permit a different conclusion as to her willingness and ability to keep Jordan safe and healthy. The evidence at the section 387 hearing, described above, belies both of these contentions.

As this court held in *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1385 and *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1220, a finding of substance abuse by a parent of a child under six years old is prima facie evidence of that parent's inability to provide regular care resulting in a substantial risk of harm. (Accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 767.) As is true in ruling at disposition on a section 300 petition, in evaluating a section 387 petition and the evidence that the prior order allowing the child to continue to reside with his or her parent was ineffective in protecting the child, the court need not wait until the child is seriously abused or injured to remove the child from the endangering home environment. (See *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1200-1201 [actual abuse is not the test under section 387 for modifying a previous placement; "the goal is to protect the child from some perceived danger or actual harm"]; see also *In re Christopher R.*, at p. 1216; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

To be sure, M.W.'s history of marijuana use and her repeated avowals to continue to use it even after the juvenile court had sustained the section 300 petition in September 2013 was a primary theme throughout these dependency proceedings. Nonetheless, prior

8

to the section 300 jurisdiction hearing, M.W. had insisted she no longer regularly smoked marijuana because her ADHD symptoms had lessened. That was apparently the basis for the court's initial disposition order that she provide four consecutive clean, random drug tests: Testing would make no sense if the court and the Department understood that M.W. intended to continue to use marijuana. In addition, although M.W. admitted she had resumed using marijuana after the home-of-parent-order at the disposition hearing, in connection with the judicial review hearings in March and September 2014 and the hearing scheduled for March 2015, she repeatedly asserted that Jordan was not in her care while she smoked marijuana. In light of M.W.'s persistent refusal to identify the individuals she claimed were supervising Jordan during those times (or, for that matter, when she was in custody for the various criminal offenses she committed between the filing of the original section 300 petition and the hearing on the section 387 petition), the credibility of that contention was highly suspect. But until the section 387 hearing there was no allegation by the Department, and no finding by the court, that M.W. chronically smoked marijuana while Jordan was in her care and supervision. Ample evidence supported that finding, not previously part of the court's evaluation of Jordan's safety in M.W.'s care. Together with the undisputed fact that M.W. refused to participate in any court-ordered programs, the finding M.W. used marijuana while purportedly caring for her three-year-old child was more than adequate to sustain the section 387 petition and to order Jordan's removal from M.W.'s custody even though the child had not yet suffered any physical harm as a result of M.W.'s substance abuse. (See § 300.2 ["The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment."].)

9

## DISPOSITION

The juvenile court's July 20, 2015 order is affirmed.


                                        PERLUSS, P. J.


We concur:


        SEGAL, J.


        BLUMENFELD, J.*

---

*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10