Filed 11/16/21  In re B.N. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re B.N., et al., Persons Coming Under the Juvenile Court Law. | B310589 |
| _____ | (Los Angeles County Super. Ct. No. 20CCJP04166A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| M.N., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Emma Castro, Judge Pro Tempore.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

M.N. (Mother) has three daughters, 13-year-old B.N., seven-year-old A.R., and one-year-old M.D. (collectively, Minors).[1] The juvenile court assumed dependency jurisdiction over Minors after finding domestic violence between Mother and M.D.'s father (Father) posed a substantial risk of physical harm to Minors.[2] The court also found Minors were similarly at risk as a result of Father's substance abuse.  Only Mother appeals, challenging the jurisdiction finding adverse to her.  We consider whether the essentially undisputed domestic violence between the parents supplies the requisite basis for dependency jurisdiction.

## I.  BACKGROUND

### A.      *The Referral and Minors' Detention*

Early in the morning on June 15, 2020, Los Angeles County Sheriff's deputies responded to a domestic violence call at Father's residence.  According to the caller, a man and a woman were seen hitting each other while carrying an infant.

When deputies arrived at the scene, they interviewed Mother.  She said a dispute over financial support between her and Father escalated and became physical when Father choked and shoved her while she was holding M.D.  The deputies observed and documented injuries (redness and scratches) to Mother's chest.  Other than stating Mother slapped him "multiple times," Father refused to answer any of the deputies' questions.  M.D. was not injured during the assault.

---

[1]      These were the Minors' ages at the start of dependency proceedings.

[2]      Mother is married to B.N.'s father but he does not have any contact with his daughter.  A.R.'s father is deceased.

Mother told the deputies there had been previous incidents of domestic violence between her and Father, and the deputies asked if she wanted to obtain an emergency protective order against Father. Mother declined, stating she would obtain a protective order at a later date if necessary. Based on Mother's statement and their observations, the deputies determined Father was the "dominant aggressor" and arrested him for domestic battery (Pen. Code, § 243, subd. (e)(1)).

The Los Angeles County Department of Children and Family Services (Department) began investigating the Minors' welfare soon thereafter. A Department social worker interviewed Mother and the two older children at Mother's home. Mother reiterated the domestic violence incident arose out of a dispute over the extent to which Father was financially supporting M.D. According to Mother, as the dispute escalated, Father ripped M.D. out of Mother's arms, refused to give M.D. back to Mother, and ran into an alley where he called law enforcement, stating he was being chased by a crazy lady. Mother pursued Father, slapped him, and, after being pushed and strangled by Father, regained possession of M.D. Mother believed Father was on drugs at the time of the incident and told the social worker he uses methamphetamine. Mother also said there had been a prior incident of domestic abuse in which Father threw her down some stairs, but she could not recall when that occurred. Mother advised that as a result of this most recent physical fight over M.D. she would seek a restraining order against Father.[3]

---

[3] When the social worker followed up with Mother approximately a month later, however, Mother reported she was still considering a restraining order as an "option."

The two older daughters denied witnessing any domestic violence between Mother and Father. The social worker did not observe any marks or injuries on any of the children and, after assessing Mother's home, found no safety concerns.

The Department social worker also interviewed Father. Like Mother, he stated the domestic violence incident grew out of a dispute over money. However, his account of the physical altercation differed from Mother's. According to Father, Mother instigated the violence by slapping him and throwing a can of formula at him. After Father picked up M.D., who was crying, Mother then hit Father twice with a car seat.[4] When Father responded by calling 911, Mother tried to take his cellphone away, which is when Father pushed Mother away. Father denied choking Mother and claimed Mother may have scratched herself to get him in trouble.

According to Father, a law enforcement officer contacted him after he was released from custody following his arrest and told Father that based on the recording of his 911 call it did not appear he was the aggressor in the incident. Father also told the social worker about another incident when he said Mother became violent: in January 2020, when all Minors were present, Mother became angry over Father's financial support and damaged his automobile, slashing the upholstery and scratching the stereo screen and rear passenger door with a box cutter.[5]

---

[4] Father said he had a mark or a bruise on his right arm from being struck with the car seat, but the police did not photograph the injury.

[5] Following this earlier incident, which Father estimated caused $1,500 in damages, Father filed a report with the Los

5

Father described his relationship with Mother as being "friends with benefits." He said he provided both financial and other support to Mother and her children, such as driving them to the doctor and to school. With regard to substance abuse, Father admitted to using methamphetamine prior to M.D.'s birth but he claimed he had not used since; he expressed a willingness to submit to drug testing on demand.

### B. The Dependency Petition and Post-Petition Investigation

In August 2020, the Department filed a multi-count dependency petition asking the juvenile court to assume jurisdiction over the Minors. The a-1 and b-1 counts in the petition alleged the Minors were at substantial risk of suffering serious physical harm in light of the two aforementioned episodes of violence between the parents: the January 2020 incident in which Mother vandalized Father's automobile with a box cutter and the June 2020 incident in which the parents were hitting each other while holding M.D. The b-2 count in the petition alleged M.D. was at risk due to Father's history of illicit drug use and his current use of methamphetamine which rendered him incapable of regularly caring for the Minors.

At the initial detention hearing, the juvenile court detained M.D. and B.N. from their fathers and ordered the Minors to remain in Mother's custody. The court permitted Father to have monitored visits with his daughter but ordered him to have no contact with the half-siblings. The court also granted Mother's

Angeles County Sheriff's Department supported by photographs of the damage.

request for a temporary restraining order against Father, which she sought on the day of the hearing.

In advance of a later-scheduled adjudication hearing, a Department investigator re-interviewed Mother, Father, and the two older minors.

Mother admitted to throwing the car seat at Father during the June 2020 incident, but she denied vandalizing Father's vehicle with a box cutter five months earlier. Mother admitted she knew Father was using methamphetamine when they began their relationship, but she continued the relationship because he was "reliable" and would help her when everyone else in her life, including her family, would not. Mother stated her relationship with Father was initially "good," but became "unhealthy" two years after it began when she became pregnant with M.D. and Father initially denied M.D. was his child.

Father, in his interview, maintained Mother instigated the fighting over M.D. in June 2020. Father claimed he never hit Mother on that occasion and only "extend[ed] [his] arm out to her neck to stop her from hurting [him]." Father admitted to almost two decades of methamphetamine use, but he disputed he was currently using the drug and reaffirmed his willingness to submit to drug testing. When the Department investigator responded that Father had been referred testing several times and either failed to appear or failed to provide a sample each time, Father stated he would test the next day. Although the investigator submitted an on-demand test for the following day, Father did not test.

Mother's eldest daughter, B.N., in contrast to her earlier statement, told the investigator she had witnessed physical violence between Mother and Father "many times." She also told

7

the investigator that she remembered Mother vandalizing Father's car. B.N. further reported she witnessed mutual domestic violence between Mother and A.R.'s father. With regard to Father's substance abuse, B.N. stated he drinks "a lot" and she has seen "crystal meth" and "weed" in his automobile. A.R., the middle sibling, told the investigator she too had witnessed Mother and Father hitting one another. Like her older sister, A.R. described substance abuse by Father: "He's . . . taking drugs and beer . . . ."

Based on its investigation, the Department deemed the potential risk to the Minors' safety as "[h]igh" due to Mother and Father's history of domestic violence and Mother's initial "noncooperation" in seeking a restraining order. The Department recommended the juvenile court take jurisdiction over Minors but leave them placed in Mother's custody and care.

### C. *Adjudication and Disposition*

The juvenile court held a combined jurisdiction and disposition hearing in December 2020. The court admitted the Department's reports, the parents did not offer any documentary evidence of their own, and none of the parties presented witness testimony.

The juvenile court, after hearing argument from the parties, sustained the petition as pled. With regard to the a-1 and b-1 petition counts alleging domestic violence, the court rejected Mother's argument that her actions in January 2020 and June 2020 were in self-defense: "Mother striking [Father] and throwing a car seat at [Father's] body, and vandalizing [Father's] car with a box cutter. I don't know what that has to do with self-defense . . . ." The court additionally sustained the b-2 count

against Father (risk of harm from substance abuse) because "Mother and the older child clearly set forth in their interviews that [Father] has a history of . . . illegal drug use" and the court was "not informed that there are any clean drug tests or that he participated in random and on-demand drug testing to confirm that he is not using illegal drugs." The court removed B.N. and M.N from their fathers, placed all of the children with Mother, and ordered various services and programs.

## II. DISCUSSION

We affirm the juvenile court's assertion of jurisdiction over Minors because substantial evidence supports the finding that the Minors were at substantial risk of suffering serious physical harm from the parents' domestic violence. The evidence of the alleged violence, all of which took place in the presence of one or more Minors, is quite strong. Though their accounts of who was the instigator or aggressor differ, both Mother and Father admit there was violence between the two of them in June 2020 while holding 11-month-old M.D. Mother's two older daughters also confirmed they had seen Mother and Father hitting each other, and the eldest daughter corroborated Father's account that Mother had vandalized his car with a box cutter while she and all of her siblings were present. This sort of violence in the immediate presence of one or more children, on one occasion making use of a dangerous, sharp object, is ample grounds for finding the requisite risk of serious physical harm.

### A. *Standard of Review*
We review jurisdictional findings "'to see if substantial evidence, contradicted or uncontradicted, supports them.

9

[Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court . . . [and] we review the record in the light most favorable to the court's determinations . . . .' [Citations.]" (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

> B. *Substantial Evidence Supports the Finding that the Minors Were at Substantial Risk of Suffering Serious Physical Harm*

Welfare and Institutions Code section 300, subdivision (b)(1) authorizes a juvenile court to exercise dependency jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ."[6] This statutory basis for jurisdiction "does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*In re I.J.*, 56 Cal.4th 766, 773 (*I.J.*).)

Courts have repeatedly recognized a child's exposure to domestic violence supports jurisdiction under section 300, subdivision (b)(1). (See, e.g., *In re Jesus M.* (2015) 235 Cal.App.4th 104, 112-113; *In re T.V.* (2013) 217 Cal.App.4th 126, 134-135; *In re R.C.* (2012) 210 Cal.App.4th 930, 941-942; *In re E.B.* (2010) 184 Cal.App.4th 568, 575-576, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) Mother, however, relies on a case that holds such a finding is proper "only

---

[6] Undesignated statutory references that follow are to the Welfare and Institutions Code.

if there is evidence that the violence is ongoing or likely to continue . . . ." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717.) We will accept that proposition for argument's sake because the criterion is satisfied here; substantial evidence supports the juvenile court's finding of jurisdiction under section 300, subdivision (b)(1).

It was undisputed that in June 2020, Mother and Father allowed a dispute over money to escalate into a violent altercation, with each party striking the other while the other held M.D. in their arms. Mother admitted to not only slapping Father, but striking him with a car seat—an action that was delivered with enough force to leave a mark on Father's right arm. Although Father denied choking or striking Mother, he did admit to putting his hands on her and the responding Sheriff's deputies saw injuries to Mother's chest. This violent struggle in June 2020 could have easily injured M.D.: Father fled from Mother's assault down an alley with M.D. in his arms and Mother in close pursuit, the parents were variously pulling M.D. out of each other's arms, and hands and car seats were flying. That M.D. was not injured is fortunate, but the substantial risk of serious harm was obviously present.

Further, just five months earlier, another dispute over money ended in violence. With all of her children present, Mother became so incensed over Father's lack of financial support she slashed various parts of Father's car with a box cutter. Although Mother denied the incident ever occurred, Father filed a police report about the incident and Mother's eldest daughter remembered witnessing it.

These repeated episodes of violence established the requisite risk of harm at the time of the jurisdiction hearing,

11

which was held approximately six months later—especially since there was nothing to indicate that in the interim Mother had made significant progress in understanding or mitigating the risk that domestic violence poses to children. The repeated episodes of violence in Mother's past also provided solid grounds to conclude there was a risk that domestic violence would recur absent court intervention.[7]

Mother contends things were different because at the time of the adjudication hearing she and Father did not live together. Physical separation, however, is not sufficient to establish the absence of a current risk of harm, especially where, as here, there is a pattern of separation followed by violence. (See, e.g., *In re F.S.* (2016) 243 Cal.App.4th 799, 815 ["Mother's status as the aggressor in at least one instance establishes that her move to Texas did not ensure additional violence would not occur; her violent behavior could find a target other than Father while she and F.S. were living in Texas. We also find it significant that the prior episodes of violence between Mother and Father were sometimes separated by months of apparent calm [citation]; even if the juvenile court believed that there had been no altercations in the months since Mother left for Texas with F.S., that was not a reliable indication that the danger of yet another incident had dissipated"], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989.) Furthermore, the fighting over

---

[7] This is particularly true when considered in light of yet another episode of violence between the parents described by Mother and corroborated by A.R.: Father threw Mother down on a flight of stairs before the episode during which she used the box cutter to vandalize his vehicle.

M.D. in June 2020 also occurred while Mother and Father were living separately; obviously, separate living arrangements were insufficient to prevent violence between the parents.

Mother also points to the restraining order Mother finally obtained against Father in August 2020. The juvenile court could reasonably conclude that was too speculative of an assurance that Mother and Father would have no future contact—or avoid violence between them—in light of her initial reluctance to seek out such an order and what appeared to be her only grudging acceptance of it.

C.    *There Is Nothing More that Requires Discussion*

Because we hold substantial evidence supports the juvenile court's finding of dependency jurisdiction predicated on multiple episodes of domestic violence, we need not resolve Mother's challenge to the court's jurisdiction findings under alternate theories. (*I.J.*, *supra*, 56 Cal.4th at 773 ["'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence'"].)

In addition, Mother's challenge to the juvenile court's disposition order is premised solely on her claim the jurisdiction findings were not supported by substantial evidence. As we have held to the contrary, and as a court has broad discretion to fashion a disposition order that is not limited to the content of

13

sustained jurisdiction findings (see, e.g., *In re Briana V.* (2015) 236 Cal.App.4th 297, 311), the argument fails.

DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.

14