Filed 4/18/16  In re Seth C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re SETH C., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D069245 |
| Plaintiff and Respondent, | (Super. Ct. No. J519239A) |
| v. | |
| JONATHAN C., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Jean Pfeiffer Leonard, Judge.  (Retired Judge of the Riverside Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.


Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Jonathan C. appeals the jurisdiction and disposition orders[1] declaring his minor son Seth C. a dependent of the juvenile court under Welfare and Institutions Code section 300, subdivision (b)(1).[2]  Jonathan contends that there was insufficient evidence to support the court's findings.  Jonathan also argues that the court erred in proceeding under section 300, subdivision (b)(1), rather than section 300, subdivision (g).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 7, 2015, the San Diego County Health and Human Services Agency (the Agency) received a report that Seth's father was currently incarcerated and that Seth was staying with his adult sister, Ashley C., a drug user with an outstanding warrant for her arrest.  The reporting party said that there was no food in the house and that Seth had been missing school due to lack of transportation.  On August 13, 2015, the social worker made an unannounced home visit to Seth's reported location with San Diego County Sheriff's Department deputies.  Ashley and Seth were present and the deputies detained

---

[1]    In a dependency case, the disposition order is the first appealable order and constitutes the judgment in the case.  (*In re S.B.* (2009) 46 Cal.4th 529, 532; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1250.)

[2]    Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

Ashley on outstanding warrants. The Agency detained Seth and placed him in a foster home. At the time of his detention, Seth was 16 years old.

The social worker spoke with Jonathan at the institution where he was incarcerated on August 14, 2015. Jonathan had been arrested on July 8, 2015, and charged with five counts of arson on forest land (Pen. Code, § 451(c)). Jonathan admitted that he had not designated anyone to care for Seth at the time of his arrest, but claimed that he had given Seth his EBT (Electronic Benefits Transfer) card. Jonathan stated that Ashley was "hooked on meth" and "has a bad drug problem," and further noted that Ashley had "learned how to shoot up from her mother." Jonathan said that he would approve placement of Seth with Jonathan's ex-girlfriend or her mother. The ex-girlfriend was not a viable placement because she had been arrested 40 times between 2003 and 2015 (including for stabbing Jonathan) and had a current warrant out for her arrest. The social worker was unable to locate the ex-girlfriend's mother. During a later interview, Jonathan claimed that he left Seth with Robin C. and Cara C. (Jonathan's sisters), and that Seth left them to go back home to Ashley because he was upset that Robin and Cara would not bail Jonathan out. Jonathan admitted that even when Seth lived with him, he had problems getting Seth to go to school. Jonathan suggested that Seth be placed in the home of Seth's best friend.

The social worker contacted several family members and was unable to immediately identify an appropriate caregiver for Seth. Following Jonathan's arrest in July 2015, he would not agree to allow Cara and Robin to care for Seth, and refused to sign paperwork allowing Cara to act as temporary guardian. Cara reported receiving text

3

messages from Seth and Ashley stating that they had no food, and said that she had provided food to them several times since Jonathan's arrest. Cara was concerned about Seth "being subjected to illegal drugs and a lack of food," and noted that Seth had previously used illegal drugs at a nearby skate park. Jonathan's father told the social worker that the lease on the home where Seth and Ashley were living would terminate on August 15, 2015, and he did not believe that Ashley had made any arrangements for a place to live after that date. Jonathan's father also stated that his relationship with Seth was strained because Seth was angry with the family for refusing to bail Jonathan out. Seth's mother initially could not be located.[3]

The social worker interviewed Seth. Seth said that he was in the vehicle with his father when his father was arrested and that the law enforcement officers took him home. Seth acknowledged that his father did not communicate with law enforcement regarding who would care for Seth. Seth stated that there was "always" food in the home and denied any knowledge of his sister's drug use. Seth admitted to using marijuana at the skate park, but later said that this had occurred on only one occasion, three years ago. In addition, the social worker spoke with Seth's school counselor, who reported that Seth's family had lacked stability even before Jonathan was arrested and that Seth had missed a lot of school, with 54 unexcused period absences since school began on July 16, 2015.

---

[3] Seth's mother was eventually located, but was not a viable caregiver. The court made a finding of detriment as to her "because of her long standing drug and alcohol issues" and "her severe mental health issues."

On August 17, 2015, the Agency filed a juvenile dependency petition on behalf of Seth. The petition alleged under section 300, subdivision (b)(1) that Jonathan left Seth inadequately supervised and without adequate provisions for support. Specifically, the petition alleged that Jonathan left Seth in the care of an adult sibling with a substance abuse problem, who was later arrested, and the whereabouts of Seth's mother were unknown, resulting in a substantial risk that Seth will suffer serious physical harm or illness. The petition further alleged, under section 300, subdivision (g), that Seth's father was incarcerated and unable to arrange appropriate and adequate care and the whereabouts of his mother were not known.

A detention hearing was held on August 18, 2015, and the court declared Jonathan to be the presumed father of Seth, pursuant to Family Code section 7540. The court found that a prima facie case existed for Seth's continued detention under section 300, subdivisions (b) and (g).

The jurisdictional hearing was held on October 1, 2015. The parties agreed to proceed by way of a document trial. The Agency moved to dismiss the section 300 subdivision (g) count, and Jonathan's counsel indicated that they had no objection to the dismissal. Seth's mother had been located prior to the hearing and was represented by counsel, but did not contest jurisdiction. Jonathan's counsel opposed the section 300 subdivision (b) allegations, arguing that Jonathan had not left Seth inadequately supervised, based on Jonathan's contention that he had left Seth in the care of Jonathan's sisters and never intended to leave Seth in Ashley's care. The court noted that regardless of Jonathan's intentions, "there's been no plausible explanation offered as to how [Seth]

5

ended up at his sister's house."  The court sustained the petition and made a true finding on the count under section 300, subdivision (b) by clear and convincing evidence as to the following allegations:

> "On or about July 8, 2015 to the present the child's parent left the child inadequately attended and inadequately supervised in that when the father was arrested.  He left the child without adequate provisions for support and in the care of an adult sibling that has a substance abuse problem.  The sibling was arrested on 8-13-2015 and the whereabouts of mother were unknown and there is a substantial risk the child will suffer serious physical harm or illness." (§ 300, subd. (b).)

The dispositional hearing was held on November 16, 2015.  The court declared Seth a dependent of the court and removed him from Jonathan's custody.  The court placed Seth with an approved family member and ordered reunification services for Jonathan.

## DISCUSSION

A.  *There is Substantial Evidence to Support the Jurisdictional Finding*

Jonathan contends that there is no substantial evidence to support the jurisdictional finding under section 300, subdivision (b).

1.  *Governing law and standard of review*

"At the jurisdictional hearing, the court determines whether the minor falls within any of the categories specified in section 300."  (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.)  The juvenile court assumed jurisdiction under subdivision (b)(1) of section 300.  Under section 300, subdivision (b)(1), in relevant part, a minor comes within the jurisdiction of the court if:

6

"[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the willful or negligent failure of the parent . . . to provide the child with adequate food, clothing, shelter, or medical treatment. . . ."  (§ 300, subd. (b)(1).)

"The Agency has the burden of establishing that the basis for jurisdiction exists at the time of the adjudication hearing." (*In re K.S.* (2016) 244 Cal.App.4th 327, 337.) However, "a child need not have been harmed before removal is appropriate because the focus of the statute is on averting harm to the child." (*In re F.S.* (2016) 243 Cal.App.4th 799, 813.)

"A substantial evidence standard of review applies. [Citation.] We review the entire record to determine whether substantial evidence supports the court's finding. We resolve all conflicts, and draw all reasonable inferences in support of the findings. [Citation.] 'We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts. The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders.' " (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.)

2. *Application*

Jonathan seeks reversal of the court's jurisdictional finding, arguing that the availability of viable care options for Seth by the time of the jurisdictional hearing eliminated any need for juvenile court jurisdiction. We disagree. As a threshold matter, any improvement in Seth's circumstances was a direct result of Agency intervention. The Agency located an appropriate placement for Seth. There is no reason to believe that

7

Seth would no longer have been at substantial risk of harm by the time of the jurisdictional hearing if he had been left under Jonathan's control. In contrast, there is substantial evidence in the record that Jonathan's conduct placed Seth at substantial risk of serious harm. (§ 300, subd. (b)(1)).

When Jonathan was arrested, he made no provisions for Seth's care. This resulted in Seth remaining in the home he shared with Jonathan and his adult sister Ashley, in Ashley's care. At home, Seth lacked food and transportation to school, resulting in more than 50 missed periods. Moreover, when Seth was taken into Agency custody he was only days away from termination of the lease for the home and thus, potential homelessness. In addition, Seth had previously experimented with drugs, was distraught as a result of his father's arrest, and his adult caregiver was someone who (by Jonathan's own admission) was "hooked on meth" and had "a bad drug problem," placing Seth in danger of succumbing to drug use himself. (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 825 ["trial court is entitled to infer that [an older child] is subjected to a substantial risk of serious physical harm when he or she is placed in an environment allowing access to drugs, with nothing to prevent him from succumbing to the temptation to ingest them."].) Jonathan had the opportunity to remedy the situation, since his sisters had volunteered to care for Seth, but he refused to sign guardianship papers. Instead, Jonathan suggested his former girlfriend as a caretaker, a person with an extensive criminal record, a history of violence, and an outstanding warrant for her arrest.

Jonathan claims that he did not intend for Seth to end up living with Ashley and that he had placed Seth with Seth's aunts from the beginning, but the record contradicts

8

his assertions. Moreover, Jonathan's conduct does not reflect a simple one time mistake at the time of his arrest, but rather, a continuing course of poor decisions in which he disregarded Seth's safety and placed him at risk. Jonathan failed to designate a caregiver, leaving Seth in a known harmful environment with an expiring lease, and then refused to accept help from his family, at Seth's expense. Jonathan's failure to place his son's safety and care above his own interests or emotions raises ongoing concerns about Seth's safety in his custody. Jonathan's circumstances have not changed,[4] nor has the risk that he and/or Seth may again act out and turn away from familial help, leaving Seth homeless and in danger. Contrary to Jonathan's assertions, the court could have reasonably concluded the jurisdiction of the juvenile court is essential to ensure that Seth remains in a safe and stable home.

The various cases that Jonathan relies upon do not require a different result. In each of those cases, the appellate courts reversed the trial court's jurisdictional findings because either: (1) the parent's circumstances had dramatically changed by the time of the hearing; (2) the allegations stemmed from a single isolated incident with no continuing course of conduct; or (3) there was lack of substantial evidence that the minor had ever been placed at risk of harm and the allegations were stale. For example, in *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1319, the appellate court found that no substantial evidence supported the jurisdictional findings under section 300, subdivisions (b) and (g) when, at the time of the jurisdictional hearing, the previously incarcerated

---

4       Jonathan's release date is unknown.

9

father was out of prison, employed, living with the paternal grandmother, consistently visiting the minor, participating in an anger management program and individual counseling and willing to pay for conjoint counseling with minor.  In another case, the appellate court found that there was insufficient evidence to state a basis for jurisdiction under section 300, subdivision (b) when the petition alleged only one isolated incident of the mother striking the minor, with nothing to suggest a likelihood of reoccurrence. (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1135; see *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1397 [leaving child in care of sexual abuser insufficient to establish ongoing risk of harm when parents called the police and removed the abuser immediately upon discovering the abuse].)  In *In re David M.* (2005) 134 Cal.App.4th 822, 829-831, the appellate court found that the Agency failed to establish a substantial risk of serious harm to the child when evidence of the mother's drug abuse and mental health was from several years earlier and there was no evidence that those problems had ever put the children at substantial risk of serious harm.  (See *In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 825 [in dicta, appellate court "seriously question[ed]" whether failure to supervise an 11-year-old child, one instance of abuse by a former babysitter, and neglect in infancy were sufficient to establish present substantial risk of serious harm].)

This case is distinguishable.  As described above, Jonathan's circumstances have not significantly changed; the allegations against Jonathan were not based on a single incidence, but represented a course of conduct; and there was evidence that Jonathan's conduct had placed Seth at substantial risk of serious harm.  We see no basis to reverse the court's jurisdictional finding under section 300, subdivision (b).

10

B. *Jonathan Forfeited His Argument Regarding Section 300 (g)*

Jonathan asserts that the juvenile court erred in applying section 300, subdivision (b) for its jurisdictional findings, rather than section 300, subdivision (g). We disagree. As a threshold matter, the issue was forfeited during the dependency proceeding by Jonathan's failure to object. "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as 'waiver,' applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.) At the jurisdictional hearing, Jonathan's counsel was specifically asked whether there was any objection to the Agency dismissing its section 300, subdivision (g) allegation and replied that there was no objection.

In any case, even if the issue had not been forfeited, it would not require reversal on appeal. The burden is on the appellant to establish prejudicial error. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1322-1323.) Jonathan has not met this burden. Jonathan argues that the Agency should have brought allegations of Jonathan's failure to protect, and the court should have analyzed the issue, exclusively under section 300, subdivision (g), as the "more applicable" code section, since it deals with allegations of inadequate provision of support by an incarcerated parent. In making this argument, Jonathan appears to contend that the only issue in this case was whether Jonathan could arrange for care for Seth during Jonathan's incarceration.

11

Jonathan relies on *In re S.D.* (2002) 99 Cal.App.4th 1068 and *In re Aaron S.* (1991) 228 Cal.App.3d 202 for the proposition that the court should not assert jurisdiction over the child of an incarcerated parent if the parent can arrange for the child's care. In both cases, the section 300, subdivision (g) allegation was the only jurisdictional ground that the juvenile court sustained. (*In re S.D.*, at p. 1074; *In re Aaron S.*, at p. 207.) The holdings in *In re Aaron S.* and *In re S.D.* do not extend to incarcerated parents who have been the subject of a true finding on any jurisdictional ground other than section 300, subdivision (g). (*In re A.A.* (2012) 203 Cal.App.4th 597, 607.)

The jurisdictional finding in this case was based on the section 300 subdivision (b) allegation, the subdivision (g) allegation having been dismissed, and, as discussed, there was substantial evidence to support the court's finding of dependency jurisdiction over Seth based on Jonathan's conduct under section 300, subdivision (b)(1). Specifically, there was substantial evidence to support the court's finding that there was "a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the willful or negligent failure of the parent . . . to provide the child with adequate food, clothing, shelter, or medical treatment. . . ." Whether jurisdiction also could have been sustained under section (g) is thus irrelevant.

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

BENKE, Acting P.J.

McDONALD, J.