Filed 5/27/21  In re K.M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law. | B307942 (Los Angeles County Super. Ct. No. 20CCJP02157A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARK M., Defendant and Appellant. | ORDER MODIFYING OPINION NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 21, 2021, be modified as follows:

1.  On page 18, delete the URL in angled brackets— "https://casetext.com/rule/ca-rules-of-court/appendices/appendix-i-emergency-rules-related-to-covid-19/rule-emergency-rule-6-emergency-orders-juvenile-dependency-proceedings"—and insert the following URL in its place:  "https://perma.cc/KU3S-C2XN."
2.  Immediately following the bracketed URL, delete "(last viewed, March 6, 2021)," and insert "(as of Mar. 6, 2021)" in its place.

\*     \*     \*

There is no change in the judgment.

_____

LUI, P. J.              CHAVEZ, J.              HOFFSTADT, J.

Filed 5/21/21  In re K.M. CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law. | B307942 (Los Angeles County Super. Ct. No. 20CCJP02157A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MARK M.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Following an incident where a father choked, punched, shoved to the ground, and stomped on the mother of his seven-year-old daughter, the juvenile court exerted dependency jurisdiction over the daughter based on father's unresolved domestic violence issues and abuse of marijuana, and the mother's failure to protect the child. The court removed the child from father's custody. On appeal, father challenges the sufficiency of the evidence supporting jurisdiction and removal and argues that the juvenile court erred in migrating from monitored in-person visits to monitored visits by telephone or videoconference after father exhibited aggressive behavior during the in-person visits. We conclude there was no error, and affirm.[1]

---

[1] Father also challenged the 10-year duration of the protective order the juvenile court entered to protect the daughter's mother, but the court subsequently reduced the duration to the statutory maximum period of three years. The court's subsequent action—of which we can and do take judicial notice—renders this challenge moot.

2

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Mark M. (father) and K.P. (mother) have one child together, a daughter named K.M. who was born in May 2012. They split up within a year of K.M.'s birth, and a family court order granted mother physical custody of K.M.; father gets weekend visits. The custody exchanges occur at a police station.

On March 30, 2020, father physically assaulted mother and then seven-year-old K.M. after exchanging her at the police station. Specifically, father drove his car onto a sidewalk in front of mother and K.M. as they walked from the station to a bus stop. Father got out of his car and followed mother and K.M. into an alleyway. There, father pushed mother up against a wall, choked her, punched her in the head with a closed fist, threw her to the ground, and stomped on her. In this flurry of blows, he inadvertently punched K.M. on the top of the head. Mother, K.M. and an eyewitness all attested to father's assault on mother.

This was not father's first physical attack on mother or K.M. He had physically assaulted mother on several prior occasions, including another incident in K.M.'s presence when K.M. was just a baby in June 2012. He had also physically assaulted K.M. at an earlier custody handoff when he chased mother and K.M. and pushed K.M, causing her to fall and hit her head on the ground.

In fact, father has a long history of physical, verbal and psychological aggression toward women in general. He has physically punched his own mother and his sister. He has stalked mother as well as another girlfriend, prompting both of them, and his own mother, to obtain restraining orders against him. And he regularly argues with his current girlfriend as well.

Father's sister reported that father intimidates people and will "go off on you" if he does not get what he wants.

Father is also a regular marijuana user. When he had custody of K.M. on the weekends, he would leave K.M. in the room with (1) a container containing marijuana helpfully labeled "Weed" or (2) a bakery item containing marijuana he helpfully dubbed "Weed cake." He would also leave his apartment to smoke marijuana with friends, leaving K.M. alone and forced to find food for herself in his residence.

Father denied that he struck mother during the March 2020 incident, denied that he has ever used marijuana, and denied that he has any criminal history despite his prior conviction of crimes that render him a sex offender.

## II.    Procedural Background

On April 15, 2020, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to assert dependency jurisdiction over K.M. on two grounds: First, father and mother have a history of engaging in violent altercations in K.M's presence; father's violent conduct places K.M. at risk of serious physical harm; and mother failed to protect K.M. by allowing father unlimited access to her (rendering dependency jurisdiction appropriate under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1)).[2] Second, father's abuse of marijuana renders him incapable of providing regular supervision of K.M., which places her at substantial risk of serious physical harm (rendering dependency jurisdiction appropriate under section 300, subdivision (b)(1)).

---

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

On April 20, 2020, the juvenile court detained K.M. from father's custody, placed her with mother, and entered a protective order requiring father to stay away from mother.

On September 17, 2020, the juvenile court held a hearing on whether to exert jurisdiction over K.M. Father testified, and denied striking mother on March 30, 2020, and denied using marijuana. The juvenile court found father to be not "credible in the least." During the hearing, father was also verbally aggressive and rude, and repeatedly interrupted the court. The court sustained the petition as pled, removed K.M. from father's custody, and ordered the Department to provide him reunification services and monitored telephonic or video-conference visitation with K.M. The court also granted the Department discretion to liberalize the visits to monitored in-person visits "if father seems like he is benefitting from the services" provided by the Department.

Father filed this timely appeal.

## DISCUSSION

### I.    Justiciability

As a threshold matter, we must decide whether to entertain father's challenge to the juvenile court's jurisdictional findings because mother did not appeal the court's exercise of dependency jurisdiction resting on the allegation against her. Dependency jurisdiction under section 300 is said to be taken over *the child*, not the parents, as a result of the harm or risk of harm the child faces. (See, e.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 310.) Because the juvenile court assumes jurisdiction over the child, not over the parents, jurisdiction may exist based on the conduct of one parent

5

alone. (*In re J.C.* (2014) 233 Cal.App.4th 1, 3; see § 302, subd. (a).)

However, we may exercise our discretion to reach the merits of a single parent's challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 450, 454), (2) could be prejudicial to the appellant or potentially impact the current or future dependency proceedings (see, e.g., *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; see also *In re I.A.* (2011) 201 Cal.App.4th 1484, 1494), or (3) "could have other consequences for [the appellant], beyond jurisdiction." (*In re I.A.*, at p. 1493.)

We elect to exercise our discretion to reach the merits of father's challenge to the exercise of jurisdiction.

II.     **Sufficiency of Evidence Supporting Jurisdiction**

Father attacks the sufficiency of the evidence underlying each of the two grounds for asserting dependency jurisdiction over K.M. We review the juvenile court's jurisdictional findings for substantial evidence. (*In re F.S.* (2016) 243 Cal.App.4th 799, 811-812, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

**A.     *Jurisdiction based on risk to K.M. arising from history of domestic violence***

A juvenile court may exert dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk the child will suffer" (1) "serious physical harm inflicted nonaccidentally upon the child by the child's parent" (§ 300, subd. (a)), or (2) "serious physical harm . . . as a result of the failure or inability of . . . her parent . . . to adequately supervise or protect the child" (§ 300, subd. (b)(1)). Exposing a child to domestic

6

violence can risk the nonaccidental infliction of serious physical harm under subdivision (a) of section 300 (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598-599), and can constitute a failure to protect the child from the risk of such injury under subdivision (b)(1) (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194). Because dependency jurisdiction turns on the risk of the child ""at the time of the [jurisdictional] hearing"" (*In re M.M.* (2015) 240 Cal.App.4th 703, 719), the propriety of jurisdiction due to a child's exposure to domestic violence under subdivisions (a) and (b) of section 300 turns on whether "the violence is ongoing is or likely to continue" (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1453-1454).

Substantial evidence supports the juvenile court's finding that father's violent behavior was, at the time of the jurisdictional hearing, likely to continue and thereby to place K.M. at substantial risk of serious physical harm. On appeal, father does not dispute that he attacked mother on March 30, 2020. This incident was just one of the more recent chapters in a much longer history of violence—from father's assaults on his own mother and sister, to his prior assaults on mother, to his stalking behavior. And this history continues to this day: Father behaved in a "hyperactive angry manner" during a monitored, in-person visit with K.M. in early September 2020, and was rude and aggressive to the juvenile court at the jurisdictional hearing itself. Not only has father's prior assaultive and aggressive behavior put K.M. in harm's way, but he has actually harmed K.M. two times. Father urges us to ignore the second incident involving K.M. on the ground that K.M. was "confused," but it is not our role to re-evaluate the evidence on appeal. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103 (*Lana S.*).) What is more, father

has repeatedly denied engaging in domestic violence or aggressive behavior. Such false denials of violent and aggressive behavior are unlikely to accompany a change in that behavior, so the risk arising from that behavior remains. (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].)

Father offers what boil down to four arguments as to why, in his view, the evidence of risk to K.M. is insubstantial.

First, he argues that K.M. is in no danger of harm because father has not engaged in any domestic violence toward mother in the five months between the juvenile court's issuance of its restraining order in April 2020 and the jurisdictional hearing in September 2020. To be sure, a parent's compliance with a restraining order can eliminate the risk of harm necessitating the exercise of jurisdiction. (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 203, 212 [so finding, at least where Department conceded the risk had been wholly eliminated].) But compliance does not *inevitably* eliminate the risk of harm, and the evidence in this case does not compel a finding that such risk has been eliminated. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) That is because father's period of nonviolence is relatively brief (five months) compared with the decades of violence and aggression he has exhibited; moreover, even the five months without an assault has been punctuated by several incidents of verbal aggression and hostility.

Second, father contends that his violent attack on mother on March 30 was "an isolated incident" because mother's "vague reports of prior physical incidents" should be disregarded. In essence, father invites us to reject part of mother's testimony and hence to reweigh her credibility. This is an invitation we must decline. (*Lana S., supra*, 207 Cal.App.4th at p. 103.)

Third, father asserts that this case has the "earmarks of a contentious family court custody battle" and is best left to the family courts. To be sure, "'the juvenile court must not become a battleground by which family law war is waged by other means,' particularly when 'the resources of local government social services agencies are stretched thin . . . .'" (*In re Nicolas E.* (2015) 236 Cal.App.4th 458, 466, quoting *In re John W.* (1996) 41 Cal.App.4th 961, 975; see *In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1096.) "But where the Department is able to prove that dependency jurisdiction is warranted, these concerns must give way to the primacy of dependency court jurisdiction and its special role." (*In re Nicholas E.*, at p. 466; *John W.,* at p. 975.) Because dependency jurisdiction *is* warranted in this case, the fact that mother and father have had a contentious relationship is not a barrier to the juvenile court's intervention to protect K.M.

Lastly, father argues that the Department's view that mother and father would benefit from jurisdiction is not a basis for jurisdiction. Along similar lines, father argues that minor's counsel did not see a risk to K.M. even with monitored visitation. This is irrelevant because this was not the basis for any of the juvenile court's jurisdictional findings and because the juvenile court is not bound by the positions of counsel.

**B.** *Jurisdiction based on risk to K.M. from use of marijuana*

A juvenile court may exert dependency jurisdiction over a child if the child faces "substantial risk . . . [of] serious physical harm" due to a parent's inability to care for the child resulting from the parent's substance abuse. (§ 300, subd. (b)(1).) Risk to a child from substance abuse can be established either by (1) proof of an "'identified, specific hazard in the child's environment,'" or (2) proof that the child is of "tender years," in which case "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766-767.)

Although K.M. is just beyond her tender years (which end at age six), substantial evidence supports the trial court's finding that father's marijuana use created identified, specific hazards in her environment. The evidence supports two such hazards that warrant the exercise of jurisdiction. First, jurisdiction is appropriate when a parent's substance abuse prompts the parent to leave the substance in a place accessible to a child who knows what it is and may be tempted to try it. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 825-826, abrogated on another ground in *In re R.T.* (2017) 3 Cal.5th 622, 629.) Here, K.M. testified that father left his "Weed" container and his "Weed cake" on the table to which she had access while father left the apartment. Second, jurisdiction is appropriate when a parent's substance abuse leaves him unable to provide the child with the basic necessities of life. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 761-763.) Here, K.M. testified that father would leave her to fend for her own food when he went downstairs to be with his friends

and that her father smoked marijuana with his friends outside his residence; from this, the juvenile court could reasonably infer that father was leaving K.M. on her own so he could smoke marijuana with his friends. (See *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113 [substantial evidence review requires reviewing court to draw all reasonable inferences in favor of ruling below].) This inference is not, as father asserts, "speculative."

Father resists this conclusion with four further arguments. First, he argues that he never smoked marijuana in K.M.'s immediate presence. This may be true, but it is irrelevant because the risk attendant to father's marijuana use stems from its effect on him (in impairing his ability to provide a safe environment and the necessities of life), not on where he ingested it. Second, father argues that K.M.'s report that his appearance changed after he ingested marijuana is not a sufficient basis for exerting jurisdiction. This may also be true, but is irrelevant because there is sufficient evidence of risk without this additional fact. Third, father argues that jurisdiction is not warranted on this ground because K.M.'s attorney asked for this jurisdictional allegation to be dismissed. While K.M.'s attorney did request dismissal of this allegation, that request is irrelevant because the substantiality of the evidence supporting a jurisdictional finding is not dependent upon what positions the litigants take with regard to that finding. Lastly, father argues that his use of marijuana does not meet the standard for substance abuse adopted in *In re Drake M.* (2012) 211 Cal.App.4th 754, 766— namely, that a finding of substance abuse "must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse by

11

a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR." Not only has father waived this argument by waiting until his reply brief to raise it (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708, fn .4), but we agree with other courts that have rejected this requirement (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1218; *In re K.B.* (2021) 59 Cal.App.5th 593, 601), and it is in any event satisfied in this case because the most recent version of the Manual defines "substance abuse" to include drug use resulting in interpersonal problems (such as physical fights) (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 185). There is substantial evidence of such interpersonal problems here. Father cites *In re J.A.*, *supra*, 47 Cal.App.5th 1036, 1046-1047 as support for his position that there was insufficient evidence for the court to find that his marijuana rose to the level of substance abuse. *J.A.* involved a mother who used edible marijuana to alleviate pregnancy symptoms and stopped immediately after being told to do so (as confirmed by postnatal drug tests) (*J.A.*, at p. 1047); father has been uncooperative with the Department and untruthful with the juvenile court, such that there is no evidence that father has stopped using marijuana or otherwise addressed the issues arising from his substance abuse.

## III. Removal

Father also challenges the juvenile court's order removing K.M. from his custody for (1) lack of sufficient evidence, and (2) failing to comply with a variety of procedural requirements.

### A. *Sufficiency of the evidence supporting removal*

A juvenile court may remove a child from her parent only if it finds, by clear and convincing evidence, that (1) "[t]here is or

12

would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child if the child were returned to that parent's custody, and (2) there are no reasonable means short of removal by which the child's physical health can be protected. (§ 361, subd. (c)(1).) We review the juvenile court's findings underlying its removal order for substantial evidence by asking whether there was evidence that is reasonable, credible, and of solid value sufficient for the court to reasonably make these findings by clear and convincing evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154-155; *In re M.M.*, *supra*, 240 Cal.App.4th 703, 719-720.)

Substantial evidence supports the juvenile court's removal finding. For the reasons outlined above, the evidence supports the court's finding that father has longstanding and unresolved anger issues that have caused physical harm to several women in father's life and, on two occasions, to K.M. herself. Father's issues pose a substantial danger to K.M.'s physical health and safety were she returned to his custody. The evidence also supports the court's finding that K.M.'s physical health cannot be protected by any reasonable means short of removal. Father's outbursts have occurred and can occur at any time—during exchanges of K.M., during monitored visits with K.M., and even during court proceedings. Given the danger posed by those outbursts, there is ample support for the court's finding that keeping K.M. out of father's custody is necessary for her safety until father has demonstrated a commitment and ability to address the issues causing those outbursts. (Cf. *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288-289 [removal inappropriate where parents expressed remorse for prior physical discipline of child, had attended parenting classes and therapy, a therapist had

13

opined that returning the children to their custody was "totally safe," and the sole basis for removing the child was the social worker's opinion that the parents "'lack[ed] understanding of their responsibility'"].)

Father responds with three categories of arguments. To begin, he asserts that there is usually no danger to K.M. because father is only violent and aggressive when father is with mother. This assertion ignores the record, which shows that father is aggressive in K.M.'s presence even when mother is absent.

Next, father urges us to take a different view of the evidence, including blaming his behavior in juvenile court on the attorneys and even the court itself. As noted above, it is not our role to reweigh the evidence de novo.

Further, father asserts that there were reasonable means short of removal for protecting K.M. and offers three arguments in support of this assertion.

First, he argues that the juvenile court's assertion of jurisdiction was itself a reasonable alterative to removal. For support, he cites the dissenting opinion in *In re G.C.* (2020) 48 Cal.App.5th 257. Apart from having no precedential value, this dissenting opinion does not support father's position. The dissenter writes that a juvenile court in assessing whether removal is necessary should do so while keeping in mind that it "has taken jurisdiction." (*Id.* at pp. 271-272.) This does not stand for the proposition that the assertion of jurisdiction *itself* obviates the need for removal; were we to give it such a reading, we would wipe section 361 from the statute books entirely, which is something only our Legislature can do. What is more, the juvenile court *did* consider whether removal was necessary in light of the Department's efforts and the court's intervention

14

when it noted how father nonetheless continued to be aggressive during monitored visits and court proceedings.

Second, father argues that a plan of "strict supervision" by the Department, including unannounced visits, was a reasonable alternative to removal. For support, he cites *In re Henry V.* (2004) 119 Cal.App.4th 522. However, unannounced visits would not alleviate the juvenile court's concerns about father's outbursts of aggression and violence unless those visits occurred all the time and unless father were willing to acknowledge and address them. (*Henry V.*, at pp. 529-530 [unannounced visits may be a viable alternative to check on bruises due to excessive child discipline, at least where the discipline is a one-time incident and the parent has embraced counseling].) Nor, as father argues for the first time in his reply brief, did the juvenile court somehow impermissibly shift the burden to him to prove that "strict supervision" would have worked.

Lastly, father argues that removal is warranted only in extreme cases of "parental abuse or neglect" where a child was "physically harmed"; for support, he cites *In re Basilio T.* (1992) 4 Cal.App.4th 155, 170-172. While *Basilio T.* contains this language, it is no avail to father because this case *does* involve an extreme case of parental abuse or neglect and K.M. has been physically harmed by father—twice.

**B.** *Procedural requirements*

Father contends that the juvenile court's removal finding is defective because (1) the Department did not provide the court with a social study that included "[a] discussion of the reasonable efforts [undertaken by the Department] to prevent or eliminate removal," as required by California Rules of Court, rule 5.690(a)(1)(B)(i), and (2) the court did not discuss and then reject

15

various alternatives short of removal (such as unannounced visits) and hence did not comply with the statutory mandate to "state the facts on which [its] decision to remove" K.M. was based (§ 361, subd. (e)).  We reject these contentions for three reasons.

First, father has forfeited these arguments by failing to raise the alleged inadequacy of the Department's report and the juvenile court's own findings with the juvenile court—at a time when any deficiencies could be corrected.  This amounts to a forfeiture.  (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1317; *In re Brian P.* (2002) 99 Cal.App.4th 616, 623.)

Second, father's arguments lack merit.  The Department's social study set forth bullet points enumerating the efforts the Department had undertaken.  This is precisely what the rule requires—namely, "[a] discussion of the reasonable efforts [undertaken by the Department] to prevent or eliminate removal."  Father faults the Department for not also "discuss[ing] alternatives to removal it had considered and rejected," but the rule does not require that discussion.  (Cf. *In re Ashly F.*(2014) 225 Cal.App.4th 803, 809 [rule is violated where social study merely states "reasonable efforts were made" without delineating what those efforts were].)  The juvenile court also complied with the statutory mandate to state the facts supporting its decision on removal because it explained why any disposition short of removal would not suffice; specific findings cataloguing lesser effective alternatives are not required by the language of section 361.

Lastly, these alleged deficiencies are not prejudicial.  The juvenile court's finding that there were, in fact, no reasonable alternatives to removal is amply supported.  There is no reasonable probability that the court would have come to a

16

contrary conclusion had the Department or the court explicitly articulated why those alternatives were insufficient. (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078-1079.)

## IV. Order For Telephonic / Videoconference Monitored Visits

Father lastly challenges the juvenile court's order requiring father's monitored visits to be telephonic or by videoconference rather than in-person. When a juvenile court removes a child from her parent with the eventual goal of reunification, the court should provide for visitation between the parent and child "consistent with the well-being of the child" unless doing so will "jeopardize the safety of the child." (§ 362.1, subds. (a)(1)(A) & (a)(1)(B).) We review a trial court's order regarding visitation for an abuse of discretion. (*In re J.P.* (2017) 14 Cal.App.5th 616, 624.)

The juvenile court did not abuse its discretion in ordering father's monitored visits to be telephonic or by videoconference rather than in person. At a monitored visit just a week before the jurisdictional and dispositional hearing, father "behaved in a hyperactive angry manner" in K.M.'s presence and, when the monitor attempted to redirect father's behavior, father "ma[d]e accusations and raise[d] his voice in a threatening manner." He thereafter made "aggressive phone calls and intimidating statements" to Department personnel. Based on this behavior, the Department recommended that future monitored visits take place in the Department's offices or "somewhere with security," but in light of the COVID pandemic's closure of the Department's offices, recommended that visits take place telephonically or by videoconference. The court followed this recommendation, determining that father's outbursts required a more secure

17

location and that the closure of the Department's offices left the most viable secure option as monitored visits via telephone or videoconference.  However, the court granted the Department discretion to resume in-person monitored visits "if father seems like he is benefitting from the services" provided by the Department.  This order is entirely consistent with Emergency Rule 6, which empowers the court to consider public health directives and the best interest of the child when making visitation decisions during the COVID pandemic.  (See Emergency Rule 6, located at < https://casetext.com/rule/ca-rules-of-court/appendices/appendix-i-emergency-rules-related-to-covid-19/rule-emergency-rule-6-emergency-orders-juvenile-dependency-proceedings> (last viewed, March 6, 2021).)

Father makes two categories of challenges.  First, he asserts that the Department should have explored other alternatives such as (1) in-person visits at police stations, (2) in-person visits with a different monitor who is more resilient to father's hyperactive aggressiveness, or (3) in-person therapeutic visits.  Therapeutic visits are not an option because father denies having any issues warranting therapy.  Given father's demonstrated aggression and rudeness *to the juvenile court*, the court was within its discretion to conclude that father's aggressiveness was not a function of a timid monitor.  And father cites nothing to support his suggestion that courts must co-opt police stations into daycare centers because father is unable and unwilling to control his aggressive and violent outbursts.  Second, father asserts that the juvenile court should have mandated a return to in-person monitored visits the instant the Department reopens its offices or another secure location is available.  The court did not abuse its discretion in pegging the resumption of in-

18

person visits to father's progress in managing his anger issues rather than mandating in-person visits once the Department's offices reopen notwithstanding father's ability (or inability) to manage his aggression.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ


19