Filed 6/18/25  In re Jordan H. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JORDAN H., et al., Persons Coming Under the Juvenile Court Law. | B340118 <br><br> (Los Angeles County Super. Ct. No. 17CCJP00848B-E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>          Plaintiff and Respondent, <br><br>     v. <br><br> HEN H., <br><br>          Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lucia J. Murillo, Juvenile Court Referee and Cristina Gutierrez Legaspi, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Fererra, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Hen H., father of Jordan H., Angelina H., Heam H., and Angelica H., appeals from the juvenile court's orders removing the children from his custody. Hen does not challenge the court's jurisdiction findings there was a substantial risk the children will suffer serious physical harm or illness as a result of his marijuana use in their presence and as a result ongoing domestic violence between Hen and the children's mother, Ilisapeti H., also in the presence of the children. Nor does Hen challenge the court's findings by clear and convincing evidence there was or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children if they were returned to him. Hen argues only that substantial evidence did not support the court's finding there were no reasonable means to protect the children other than removing them from his custody, as required by Welfare and Institutions Code section 361, subdivision (c).[1] Hen contends there were reasonable, less restrictive means to protect the children while they were in his care, such as having extended video calls,

_____

[1]      Statutory references are to the Welfare and Institutions Code.

2

unannounced home visits, in-home services, and more frequent drug testing.

We conclude substantial evidence supported the juvenile court's findings removal was the only way to protect the children. The evidence showed that Hen and Ilisapeti engaged in physical altercations in the presence of the children over the course of at least seven years; that the couple repeatedly told the Los Angeles County Department of Children and Family Services that they had separated, but would reunite as soon as the Department concluded its investigation; and that Hen refused to engage or cooperate with Department social workers at the outset of the proceedings, and even relocated with the children without telling the Department. The court did not err in concluding the alternative means suggested by Hen would not be sufficient. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Court Detains the Children from Ilisapeti*

Hen and Ilisapeti have four children together: Jordan, Angelina, Heam, and Angelica. The children are now eight, seven, five, and two years old, respectively.

In October 2023 Heam reported to a teacher that Hen had kicked him in the ear. A Department social worker went to two different addresses for the family several times over the course of two weeks, but was unable to locate the family. The social worker also left voicemail messages for Hen asking him to call her back, but he did not.

In early November 2023 the social worker went to the school Angelina and Jordan attended at the end of the school day.

The social worker found the children walking with Hen and introduced herself. Hen said he did "not have time for this" and walked away. The social worker gave Hen a business card and asked him to call her as soon as possible. Two weeks later, the social worker went to the first address for the family and found that it was uninhabited and that the utilities were shut off. She went to the second address and found no one there. She called Hen, and someone answered the phone, but said the social worker had the wrong number.

On November 20, 2023 the Department reached Ilisapeti by phone. She denied that Hen kicked Heam or that Hen was ever abusive toward the children. Ilisapeti said that she was not living with the family, but that she and Hen were working on their relationship. She denied any domestic violence. Ilisapeti also said that Hen felt he was "being harassed" by the Department and that he did not want to talk to the social worker. Ilisapeti was reluctant to reveal the family's location, stating Hen "gets upset when information is shared."

The Department finally made contact with Hen on December 6, 2023. He said he and the children were homeless and staying at a motel. The social worker interviewed Hen and the three older children at the motel. (Angelica was 15 months old and preverbal at the time.) Hen stated Ilisapeti had been placed on an involuntary psychiatric hold after an incident at a local park a few days earlier. Hen said Ilisapeti, who has bipolar disorder and schizophrenia but did not take her prescribed medication, "tried to start something" at the park and accused him of having an affair. Hen denied there was any domestic violence in the relationship. The Department learned, however,

4

the family received family maintenance services from 2017 to 2019 because of domestic violence issues.

Heam repeatedly denied Hen kicked him or hit him. He initially denied Hen physically disciplined him, but later changed his statement and said Hen spanked him. Heam would not disclose any details about the spanking, such as how often his father spanked him, how much it hurt, whether it left any marks or bruises, or whether his father hit him with objects. Angelina similarly denied that Hen hit or kicked Heam or that Hen hit her as a form of punishment. She also denied seeing her parents fight or yell at each other. Jordan ignored or declined to respond to the social worker's questions, but he denied that Hen hit or kicked Heam or that Hen physically abused Ilisapeti. Jordan refused to let the social worker examine him to screen for physical abuse and during the interview he stayed in the motel bed and under the sheets. The social worker observed two large blood stains on the sheets, which Hen and Jordan said came from a lost tooth. The social worker said "the bloodstains and scatter droplets throughout the bedsheets do not appear to be from Jordan's tooth as it was an excessive amount of blood."

The Department asked the court to detain the children from both parents without notice because of ongoing domestic violence and Ilisapeti's substance abuse and unstable mental health. The court authorized the Department to detain the children from Ilisapeti only.

B.      *The Department Files a Petition Under Section 300;*
        *the Juvenile Court Detains the Children from Hen*

A Department social worker attempted to personally serve the emergency detention order on December 18, December 20,

and December 21, 2023, but she could not locate the family.  The social worker sent Hen and Ilisapeti the order via text message and advised Ilisapeti not to have contact with the children until she and Hen contacted the Department.

On December 27, 2023 the Department filed a petition under section 300, subdivision (b)(1), alleging in counts b-1 and b-2 that Ilisapeti's mental health issues and substance abuse rendered her unable to adequately supervise or protect the children.  The Department alleged in count b-3 that Hen's substance abuse (marijuana) rendered him unable to adequately supervise or protect the children.  The Department asked the juvenile court to continue to detain the children from Ilisapeti and place them with Hen.  The Department also asked the court to order monitored visitation for Ilisapeti, require Ilisapeti to submit to a psychiatric evaluation, and require Ilisapeti and Hen to submit to random drug testing.

Ilisapeti contacted the Department on January 3, 2024.  She told the social worker that she was at the family's motel room with Angelica and Heam and that Hen was running errands with Jordan and Angelina.  Ilisapeti confirmed Hen's phone number had not changed, which led the Department to conclude Hen "appears to be aware of the [removal order] and has blatantly violated [it] multiple times."  Ilisapeti said that, earlier that day, Hen "yelled and cursed" at her in front of the children because she was cooperating with the Department.  Hen still had not contacted the Department as requested.

On January 5, 2024 the Department filed a second application to detain the children from Hen.  This time, the court granted the request.  The Department located the family and

detained the children on January 8, 2024. The court ordered monitored visitation for Hen and Ilisapeti.

C. *The Department Files an Amended Petition Adding Allegations of Domestic Violence*

On February 14, 2024 the Department filed an amended petition with four counts, three of which were in the original petition. In an amended count b-3 regarding Hen's substance abuse, the Department added allegations Jordan was a prior dependent child of the juvenile court due to Hen's substance abuse. The Department added a fourth count under section 300, subdivision (b)(1), alleging that Hen and Ilisapeti had a history of engaging in physically violent altercations and that Jordan was a prior dependent child of the juvenile court due to the couple's domestic violence in his presence.

In its jurisdiction and disposition report the Department reviewed the family's history, pointing out that in 2017 the juvenile court sustained allegations Ilisapeti and Hen had a history of engaging in violent altercations in Jordan's presence and that Ilisapeti's mental illness, which included untreated post-traumatic stress disorder and borderline personality disorder, rendered her unable to supervise or protect Jordan. During that dependency case the court (in 2017 and 2019) ordered Hen to participate in drug testing and individual counseling to address anger management, domestic violence, the effects of violence on children, and communication skills. The Department reported there were eight other referrals after July 2017 involving claims the parents exposed the children to marijuana smoke, engaged in domestic violence, neglected the children, emotionally abused the children, and (along with other

7

family members) physically abused the children, as well as a claim regarding Ilisapeti's unstable mental health and Hen's verbal abuse of Ilisapeti and the children.

The Department interviewed the children and the parents again about the allegations in the petition. Regarding Hen's marijuana use, each of the three older children said that Hen smoked "weed," that he kept it in his car or his backpack, and that it smelled "bad." Heam also told the social worker and his foster parent that he smoked marijuana with Hen. Hen told the Department social worker that he began smoking marijuana in 2015 after a car accident and that he smoked daily since that time. Hen said that the children had never seen him smoking marijuana and that he kept the drug locked in his backpack. (The social worker did not see a lock on the backpack.) Hen said he only smoked outside when the children were asleep or when someone else was watching them. Ilisapeti, on the other hand, said that Hen smoked in front of the children and that he told Jordan and Heam that they could smoke marijuana too. She also said that Hen stored his marijuana in his backpack or in a compartment in his car, neither of which he locked, and that Hen left his backpack (and the marijuana) within reach of the children.

Regarding the (new) allegation of domestic violence, the three older children each said Ilisapeti and Hen yelled at each other and pushed each other when they fought. They also said Hen would get upset with Ilisapeti and tell her to leave the family home or motel room. Hen admitted that he fought with Ilisapeti and that the fighting could be loud enough for the children to hear, but he denied ever pushing Ilisapeti. Hen also said he did not plan to reunite with Ilisapeti.

Ilisapeti said that her relationship with Hen was "toxic." She also said she and Hen had multiple verbal confrontations and a recent physical altercation in front of the children. Ilisapeti admitted that she and Hen pushed each other in front of the children during fights and that she threw things at him. Ilisapeti told a Department social worker that she did not plan to reunite with Hen and that she obtained a new phone number and blocked him. The social worker later learned, however, Ilisapeti was in contact with Hen. In addition, the Department reported, Ilisapeti and Hen had a pattern of telling the Department that they had ended their relationship, only to reunite after the Department closed its investigation.

D. *The Juvenile Court Declares the Children Dependent Children of the Court and Removes Them from Both Parents; Hen Appeals*

At the February 29, 2024 jurisdiction and disposition hearing, Hen testified regarding his marijuana use that he kept his marijuana in his car, inside a "locked double zipper backpack made for marijuana." He also stated that, if he used marijuana, another sober adult was always present and responsible for watching the children. Regarding the allegation of domestic violence, Hen denied engaging in any physical or verbal fights with Ilisapeti in front of the children. Hen also denied having contact with Ilisapeti and said he did not plan to reunite with her.

The juvenile court sustained all four counts in the amended petition. The court found, among other things, Hen's marijuana use in the presence of the children exposed them to secondhand smoke and created a substantial risk they will suffer serious

physical harm or illness. The court stated that each of the children gave "very specific descriptions of where [Hen] smokes, what it smells like, what it looks like. If [Hen], in fact, did not smoke it in their presence, they would not be able to describe it with specificity." The court also found that Hen and Ilisapeti had a history of violent altercations, that Ilisapeti had thrown things at Hen, that Hen verbally abused Ilisapeti, and that the parents' domestic violence placed the children at substantial risk of suffering serious physical harm or illness. The court cited the history of domestic violence referrals over more than seven years.

The court declared Jordan, Angelina, Heam, and Angelica dependent children of the juvenile court, found by clear and convincing evidence removal was necessary, removed the children from Hen and Ilisapeti, and placed them under the care and supervision of the Department for suitable placement. Hen appealed from the court's jurisdiction findings and disposition orders, challenging only the order removing the children from him.[2]

---

[2] Hen filed his notice of appeal after we granted his application for relief from default for failure to file a timely notice of appeal. Hen also filed in this appeal a notice of appeal from the juvenile court's orders at the August 29, 2024 six-month review hearing under section 366.21, subdivision (e). Hen does not discuss or argue the juvenile court erred in making any of the orders at the six-month review hearing.

10

## DISCUSSION

A. *Applicable Law and Standard of Review*

Section 361, subdivision (c)(1), provides: "A dependent child shall not be taken from the physical custody of their parents . . . unless the juvenile court finds clear and convincing evidence" there "is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (See *In re H.B.* (2024) 106 Cal.App.5th 219, 237-238; *In re M.D.* (2023) 93 Cal.App.5th 836, 856.) "Before a court may order a child physically removed from his or her parents, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal." (*In re Dakota J.* (2015) 242 Cal.App.4th 619, 631; see *In re Ethan C.* (2012) 54 Cal.4th 610, 617.) "Actual harm to a child is not necessary before a child can be removed." (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

"We review a dispositional order removing a child from a parent for substantial evidence, "'keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.'" [Citation.] '[A]ppellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands.' [Citation.] In applying this standard of review, 'the question before the appellate court is whether the record as a whole contains

11

substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' [Citation.] We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*In re M.V.* (2022) 78 Cal.App.5th 944, 960; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.) The appellant has the burden to show """there is no evidence of a sufficiently substantial nature"" to support the dispositional removal order." (*In re L.O.* (2021) 67 Cal.App.5th 227, 245; see *In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

B. *Substantial Evidence Supported the Juvenile Court's Order Removing the Children from Hen*

Substantial evidence supported the juvenile court's findings that removal was necessary. First, Hen refused to cooperate with the Department throughout the proceedings. As discussed, Department social workers were initially unable to locate the family. Hen repeatedly refused to comply with requests to contact the Department and violated the court's emergency detention order prohibiting Ilisapeti from being alone with the children. The court reasonably concluded removal was necessary because Hen could not be trusted to comply with court orders or cooperate with the Department, as required to ensure the children's safety. (See *In re E.E.*, *supra*, 49 Cal.App.5th at p. 212 ["failure to engage in services . . . , such as failing to cooperate with the social services agency, being less than forthcoming during interviews, or missing drug tests" can "support removal from parental custody at disposition"]; *In re John M.* (2012)

12

212 Cal.App.4th 1117, 1127 [substantial evidence supported removal where the parent's violations of juvenile court orders suggested the parent would violate future court orders].)

Second, Hen and Ilisapeti had engaged in domestic violence over many years, despite the Department's repeated involvement with the family. The evidence showed that over the years Hen and Ilisapeti engaged in violent physical and verbal fights in the presence of the children. In 2017 the juvenile court sustained allegations that Hen and Ilisapeti had "a history of engaging in violent altercations," that Hen pushed Ilisapeti in Jordan's presence (when Jordan was only a year old), that Ilisapeti threw objects at Hen, and that Hen verbally abused Ilisapeti. After the juvenile court terminated its jurisdiction in 2019, the Department received an additional referral regarding domestic violence in the family. In 2022 Ilisapeti went to the hospital and said she injured herself by smashing a car window because she was angry with Hen. At the time Jordan told a Department social worker that Hen and Ilisapeti "argue all the time and when they are angry they will push and yell at one another."

Hen and Ilisapeti also engaged in violent confrontations in front of the children during these dependency proceedings. In early December 2023 Hen and Ilisapeti yelled at and shoved each other while they were with the children in a park. Angelina described the incident this way: "They were drinking beer outside the [car] and we were in the car (the child stated that her brother Heam, sister Angelica and her were in the car, while Jordan was skating with [his] park friends) and they started to fight. My mom was yelling at my dad and she threw the beer on the ground, there was glass [everywhere] and my dad push my mom and my mom grabbed my dad from his shirt. My dad shirt

13

was rip and my mom was cut on her leg with the glass. The police came and they took my mom to the hospital." This was not an isolated incident. Angelina continued: "When my mom got out of the hospital, we pick her up and she came to the motel. My mom and dad would yell loud in the motel and they would say bad words . . . ." Jordan and Heam gave similar accounts of the park incident and said Hen kicked Ilisapeti out of the motel when he was upset.

And the evidence suggested the domestic violence could continue. Specifically, the Department doubted Hen and Ilisapeti would maintain their separation, given their history of telling the Department they intended to separate and immediately reconciling after the Department concluded its investigation. Hen's pattern of denying responsibility for the circumstances giving rise to the Department's involvement compounded the risks to the children. (See *In re V.L.*, *supra*, 54 Cal.App.5th at pp. 156-157 [denying domestic violence increases the risk it will recur and supports removal under section 361, subdivision (c)]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].) The juvenile court reasonably concluded nothing short of removal would protect the children from their parents' violent behavior. (See, e.g., *In re Nathan E.* (2021) 61 Cal.App.5th 114, 124 [substantial evidence supported removal where the mother failed over many years to comply with court orders, continued to engage in domestic violence with the father, and was initially evasive and uncooperative with the child protective agency].)

Hen asserts, as a general matter, "[t]he fact [he] used marijuana and had engaged in domestic violence with Ilisapeti in the children's presence is also insufficient to support the removal

14

orders."  Hen is incorrect.  (See *In re Nathan E.*, *supra*, 61 Cal.App.5th at p. 124 [parents' ongoing domestic violence issues supported the juvenile court's finding by clear and convincing evidence that returning the children to the mother's custody posed a risk of substantial danger to them]; *In re V.L.*, *supra*, 54 Cal.App.5th at pp. 155-157 [ongoing cycle of domestic violence supported removal]; *In re F.S.* (2016) 243 Cal.App.4th 799, 812-813 [evidence of three instances of domestic violence supported removing infant child from parents], disapproved on another ground in *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1003, fn. 4.)

The two cases Hen cites do not support his argument.  The first, *In re Zoe H.* (2024) 104 Cal.App.5th 58, did not involve a parent's drug use or a pattern of domestic violence as a basis for removing the child under section 361, subdivision (c).  *Zoe H.* involved the extent to which jurisdiction findings under section 300 may support removal under section 361, subdivision (c).  The court in *Zoe H.* held:  "By statute, a jurisdictional finding 'pursuant to subdivision (e) of Section 300' [citation]—that is, a finding of severe physical abuse of a child less than five years old—constitutes prima facie evidence that the child cannot safely remain in the home.  [Citation.]  Jurisdictional findings under the other subdivisions of section 300 do *not* constitute prima facie evidence that the child cannot safely remain in the home." (*Zoe H.*, at p. 61.)  The issue was relevant in *Zoe H.* because the child protective agency in that case argued (incorrectly) that jurisdiction findings under all subdivisions of section 300—not just findings under section 300, subdivision (e)—""'are prima facie evidence the child cannot safely remain in the home.'"" (*Zoe H.*, pp. 61, 72.)  Hen does not argue the juvenile court erred

15

in using its jurisdiction findings as prima facie evidence to support removal.

The second case Hen cites, *In re Henry V.* (2004) 119 Cal.App.4th 522, also did not involve domestic violence or parental drug abuse as a basis for removing the child under section 361, subdivision (c). Hen quotes this sentence from the court's opinion, adding the italics: "'The law requires that a child remain in parental custody pending the resolution of dependency proceedings, *despite the problems that led the court to take jurisdiction over the child*, unless the court is clearly convinced that such a disposition would harm the child.'" (*Henry V.*, at p. 525.) This quote from the court's opinion in *Henry V.* does not suggest evidence of domestic violence or parental substance abuse may not support removal. And Hen does not provide any analysis or discussion of the case or how it applies here. (See *Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 39 ["The absence of reasoned legal argument supported by citation to authority allows this court to treat the contention as forfeited."]; *In re A.C.* (2017) 13 Cal.App.5th 661, 672 ["an argument in an appellate brief [that] is supported by only an opinion or argument of appellant's counsel without 'citation to any recognized legal authority,'" is forfeited for "failure to present supporting substantive legal analysis"].)

Hen also argues the juvenile court should have placed the children with him and addressed the Department's concerns by making a "no contact" order with Ilisasepi to ensure there would be no further domestic violence, ordering more frequent drug testing, authorizing in-home services and unannounced home visits, and ordering the Department to monitor the family with extended virtual calls. According to Hen, increasing the number

16

of mandated reporters in the home would give him additional support and protect the children from harm. He cites *In re Jasmine G.* (2000) 82 Cal.App.4th 282, at page 284 for the proposition "California law requires that there be no lesser alternative before a child may be removed from the home of his or her parent." That's correct as a general proposition, but the juvenile court could reasonably conclude from the evidence—particularly Hen's lack of candor and failure to accept responsibility—a combination of services and monitoring that, under different circumstances, might provide a viable alternative to removal, would not sufficiently protect these children.

## DISPOSITION

The orders are affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.

17